## EMERSON (as Interpleader) *v.* SENTER & Another.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF ARKANSAS.

Submitted March 9, 1886.—Decided April 12, 1886.

A sole surviving partner of an insolvent firm, who is himself insolvent, may make a general assignment of all the firm's assets, for the benefit of all joint creditors, with preferences to some of them: and such assignment is not invalidated by the fact that the assignor fraudulently withheld from the schedules certain partnership property for his own benefit, without the knowledge of the assignee or of the beneficiaries of the trust.

This suit was commenced by the defendants in error as plaintiffs, creditors of the firm of A. Butler & Co. One Moores, sole surviving partner, was defendant, and property which had belonged to the firm was attached. The plaintiff in error interpleaded, setting up title to the attached property under an assignment from Moores for the benefit of the creditors of the firm. Judgment for plaintiffs; to review which the interpleading creditor sued out this writ of error. The facts are stated by the court as follows:

Butler and Moores constituted a mercantile firm doing busi-

ness in the State of Arkansas under the name of A. Butler & Co. The former died on the 17th day of December, 1881, and thereafter, February 23, 1882, Moores, as surviving partner, executed a deed of assignment to Emerson, the plaintiff in error. The deed recited the death of Butler, the insufficiency of assets to discharge the partnership debts, and the desire of Moores, as surviving partner, to provide for their payment, so far as in his power, " by an assignment of all the property belonging to him as such surviving partner." The grantor, for the purposes named, and in consideration of one dollar paid by the grantee, transferred and assigned to Emerson, his successors and assigns, " all the stock in trade, goods, wares, and merchandise, debts, choses in action, property and effects of every description, belonging to the said firm of A. Butler & Co.," or to the grantor, " as such surviving partner, mentioned, contained, or referred to in the schedule hereunto annexed." The conveyance was in trust that the assignee take possession of the property described, " sell the same as provided by law, and, with all reasonable dispatch," collect the debts and demands assigned, and apply the proceeds : 1. To pay all the just and reasonable expenses, costs, and charges of executing the assignment, and carrying into effect the trust thereby created ; 2. To pay in full, if the residue of the proceeds is sufficient for that purpose, all the debts and liabilities then due or to become due from Moores, as surviving partner, with interest thereon, to certain preferred creditors, among whom were the defendants in error, Senter & Co. ; 3. To apply the balance to all other debts and liabilities of A. Butler & Co., or of Moores, as surviving partner ; 4. To repay the latter, as surviving partner, whatever may remain after meeting the costs and expenses of the trust, and the amounts due respectively to other creditors.

The deed invested the assignee with all the power and authority necessary to the full execution of the trust created by it. It was accepted by Emerson and by some of the preferred creditors therein mentioned.

The debts of the firm largely exceeded its assets, and Moores individually, as well as as surviving partner, was insolvent when he made the assignment. In addition to the recitals in the

deed of a desire to make an assignment of all the property in his hands as surviving partner, Moores represented to his creditors that he had done so. Nevertheless, for the purpose of hindering and cheating his creditors, he omitted from his schedule five hundred dollars worth of goods which belonged to him as surviving partner; and, with like intent, left out of the schedule, and withheld from his assignee, one thousand dollars in cash and other property which he held as surviving partner; appropriating to his own use the property so omitted from the schedule.

Neither the assignee nor the preferred creditors who accepted the deed had any knowledge of the alleged fraud of the grantor, until after their acceptance of its provisions.

Upon an issue formed between Emerson, asserting the validity of the deed, and Senter & Co., who, as creditors of the firm, attached the assigned effects as the property of the surviving partner, the deed of assignment was held to be void, and the claim of the assignee denied.

*Mr. U. M. Rose* for plaintiff in error.

*Mr. Thomas C. McRae* for defendants in error.

I. A surviving partner has no power to make an assignment of the partnership assets in his hands, for the benefit of creditors, with preferences. He is a trustee. If the fund in his hands is not enough to pay partnership debts in full, all debts being payable equally, he can do nothing to disturb this equality. Parsons on Partnership, 2d. ed. 442, 443; *Richards* v. *New Hampshire Ins. Co.*, 43 N. H. 263; *Marsh* v. *Bennett*, 5 McLean, 117, 122. In the case of *Hoyt* v. *Sprague*, 103 U. S. 613, this does not seem to have been considered. The power to prefer is not necessarily incident to the power to assign. Limited partnerships, for instance, may make general assignments, but they cannot make preferences. Burrill on Assignments, 3d ed. §§ 90, 171; Arkansas Digest, 1884, § 4842. It does not follow that, because a surviving partner may practically prefer a creditor of the firm by paying him, he may pre-

fer him in a general assignment. *Wall* v. *Lakin*, 13 Met. 167; *United States* v. *Bank of the United States*, 8 Rob. La. 262.

II. The fraud of the assignor vitiated the assignment. The assignee is affected with notice of it. He takes the assignor's place, and is in no better position than he is. *Haggerty* v. *Palmer*, 6 Johns. Ch. 437; *Root* v. *French*, 13 Wend. 570; *Mackie* v. *Cairns*, 5 Cowen, 547, 555; *Coddington* v. *Bay*, 20 Johns. 637; *Bay* v. *Coddington*, 5 Johns. Ch. 54; *Petrie* v. *Clark*, 11 Serg. & Rawle, 377; *McCarty* v. *Springer*, 3 Rawle, 159; *Dickerson* v. *Tillinghast*, 4 Paige, 215; *Hunt* v. *Weiner*, 39 Ark. 70, 74, 75; *Gere* v. *Murray*, 6 Minn. 305; *Knowles* v. *Lord*, 4 Wharton, 500; *Pierson* v. *Manning*, 2 Mich. 445; *Flanigan* v. *Lampman*, 12 Mich. 58; *Farrington* v. *Sexton*, 43 Mich. 454; *Stickney* v. *Crane*, 35 Vt. 89; *Hairgrove* v. *Millington*, 8 Kansas, 480, 486; *Ruble* v. *McDonald*, 18 Iowa, 493; *Lampson* v. *Arnold*, 19 Iowa, 479; *Stone* v. *Marshall*, 7 Jones Law (N. C.) 300; *Irwin* v. *Keen*, 3 Wharton, 347; *Swan* v. *Crafts*, 124 Mass. 453; *Clements* v. *Berry*, 11 How. U. S. 398; Burrill on Assignments, 391 and 484. The assignee is certainly open to all equities that might exist against the assignor. Wade on Notice, §§ 431, 436; *United States* v. *Buford*, 3 Pet. 12; *Cowdrey* v. *Vandenberg*, 101 U. S. 575.

Though, in ante bellum days, while Arkansas had no commerce to speak of, in three cases cited by the appellant, the Supreme Court did, without reference to authority, hold, in chancery, that deeds of trust were not bad unless the creditors' fraud concurred with that of the grantor; its present view, based upon more mature consideration, points the other way. For, at the end of a series of well-considered cases, in *Hunt* v. *Weiner*, 39 Ark. 70, 75, the court uses this language: "Perhaps the rule which requires the grantee to participate in the fraud, in order to avoid the deed (a deed of assignment), has no just application, except in case of purchasers, or persons who have parted with some valuable right." Any other view would afford an assignor vast opportunities for effectually compassing fraud.

Beside the Arkansas cases referred to, appellant's counsel cites decisions of this court, and of Ohio, Illinois, Missouri,

Virginia, Tennessee, Michigan, and Alabama, to sustain his position. But a careful resumé of the authorities will show that the most of those cited by appellant's counsel are either not in point, or are based upon some statute, or upon a hasty and ill-considered impression, authorities *pro* and *con.* not being considered.

We deny that this court or the Supreme Court of Arkansas is opposed to the view of the lower court, or that the view it entertained is opposed to principle and the weight of authority. It is possible that Ohio and Missouri would not be with the appellant, if no statute prevailed. We deny that Alabama would be with him if the question were *res nova.* We deny that Michigan is with him. We admit that Virginia and Tennessee are with him, but assert that they are opposed to sounder views as expressed by the judges in Vermont, Massachusetts, New York, Pennsylvania, North Carolina, Michigan, Minnesota, Iowa, Kansas, Arkansas, and the Federal Circuit Court in Minnesota and Arkansas.

Mr. Justice Harlan, after stating the facts in the language reported above, delivered the opinion of the court.

The court below proceeded upon the ground, in part, that a sole surviving partner of an insolvent firm, who is himself insolvent, cannot make a valid assignment of partnership assets for the benefit of the joint creditors, with preference to some of them. We are unable to concur in this view.

Some of the cases hold that one partner cannot, either during the continuance of the partnership, or after its dissolution by agreement, make such an assignment. It cannot, however, be doubted that, in the absence of a statute prohibiting it, such an assignment, whether during the continuance of the partnership or after its dissolution by agreement, would be valid where the partners all unite in executing it, or where one of them executes it by the direction or with the consent of the others. Partnership creditors have no specific lien upon the joint funds for their debts. 3 *Kent. Com.* 65 ; *Story Partnership,* § 358. They have no such relations with the partnership as entitles them to interfere with the complete control of the joint prop-

erty by the partners, during the existence of the partnership, or with their right, after a dissolution, by agreement, of the partnership to dispose of it for the payment of their joint debts, giving such preference as they deem proper.

When the partnership is dissolved by the death of one partner, the surviving partner is entitled to the possession and control of the joint property for the purpose of closing up its business. *Wickliffe* v. *Eve*, 17 How. 467; *Shanks* v. *Klein*, 104 U. S. 18. To that end, and for the purpose of paying the joint debts, he may, according to the settled principles of the law of partnership, administer the affairs of the firm, and, by sale or other reasonable disposition of its property, make provision for meeting its obligations. He could not otherwise properly discharge the duty which rests upon him to wind up the business, and pay over to the representative of the deceased partner what may be due to him after a final settlement of the joint debts. It is true that, in many cases—where, for instance, the surviving partner is not exercising due diligence in settling the partnership business, or is acting in bad faith—the personal representative of the deceased partner may invoke the interference of a court of equity, and compel such a disposition of the partnership effects as will be just and proper; this, because, as between the partners, and therefore, as between the surviving partner and the personal representatives of the deceased partner, the joint assets constitute a fund to be appropriated primarily to the discharge of partnership liabilities; though not necessarily, and under all circumstances, upon terms of equality as to all the joint creditors. But, while the surviving partner is under a legal obligation to account to the personal representative of a deceased partner, the latter has no such lien upon joint assets as would prevent the former from disposing of them for the purpose of closing up the partnership affairs. He has a standing in court only through the equitable right which his intestate had, as between himself and the surviving partner, to have the joint property applied in good faith for the liquidation of the joint liabilities. As with the concurrence of all of the partners the joint property could have been sold or assigned, for the benefit of preferred creditors of the firm, the surviving

partner—there being no statute forbidding it—could make the same disposition of it.  The right to do so grows out of his duty, from his relations to the property, to administer the affairs of the firm so as to close up its business without unreasonable delay ; and his authority to make such a preference— the local law not forbidding it—cannot, upon principle, be less than that which an individual debtor has in the case of his own creditors.  It necessarily results that the giving of preference to certain partnership creditors was not an unauthorized exertion of power by Moores, the surviving partner.

It is, however, contended that the assignment in question was void because of the fraudulent omission from the schedule by Moores of certain property which constituted a part of the partnership assets, and was appropriated by him to his own use.  But this fraud upon the part of Moores did not affect the rights of the assignee and of the beneficiaries of the trust who were ignorant of the fraud of the grantor.  Such seems to be the established doctrine of the Supreme Court of Arkansas.  In *Hempstead* v. *Johnston*, 18 Ark. 123, 140, it was said that a deed of trust or other conveyance is not necessarily void " because its effect is to hinder and delay the creditors of the grantor in the collection of their claims.  But such must be its object.  It must be a fraudulent contrivance for that purpose ; and the grantee, or person to be benefited by the conveyance, must be party privy to the fraudulent design."  Referring to the facts which existed in that case, that the grantor was in failing circumstances when the deed of trust was made; that suits were pending against him; and that some of the beneficiaries were his near relatives, the court said :  " But all these facts may and do exist in many cases, consistently with the hypothesis that the conveyance was made in good faith to secure preferred creditors, whose demands are just."  In *Cornish* v. *Dews*, 18 Ark. 172, 181, the court said :  " As held in the case of *Hempstead* v. *Johnston, supra,* if the deed was valid when executed, no subsequent conduct on the part of the grantor, or the trustee, however fraudulent, could avoid the deed, and deprive the creditors, accepting it in good faith and not participating in the fraud, of their rights under it.  And even if Cor-

nish (the grantor) had the purpose, when he made the deed, of hindering and delaying creditors not provided for by it, yet, if the preferred creditors were not parties or privies to his fraudulent purpose, but accepted the deed in good faith to secure the debts really due them, it would be valid as to them." See also *Mandel* v. *Peay*, 20 Ark. 325, 329; *Hunt* v. *Weiner*, 39 Ark. 70, 75. The rule announced by the Supreme Court of Arkansas is in harmony with the settled doctrines of this court, and accords with sound reason. *Marbury* v. *Brooks*, 7 Wheat. 556, 577; *Brooks* v. *Marbury*, 11 Wheat. 78, 89; *Tompkins* v. *Wheeler*, 16 Pet. 106, 118. There was nothing upon the face of the deed to Emerson to indicate that it was made for any other purpose than in good faith, to make provision for the payment of certain debts held against the grantor as surviving partner; first, debts due to the preferred creditors, and, then, debts held by other creditors. If the intentional omission by the grantor of certain property from his schedule, and his appropriation of it to his own use, was such a fraud as would vitiate the deed where the assignee or the preferred creditors have previous notice of such omission, that result cannot happen when they were ignorant of the fraud at the time they accepted the benefit of the conveyance.

*The judgment is reversed, with directions to enter judgment on the special finding of facts in favor of the plaintiff in error.*