AUGUST *et al. v.* CALLOWAY *et al.*

(*Circuit Court, S. D. Georgia, W. D.* May 15, 1888.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—PREFERENCES—SURVIVING PARTNER.

The supreme court of Georgia having held that the laws governing voluntary assignments with preferences must be strictly construed against the assignee, and the law being that a surviving partner cannot make such an assignment unless both he and the partnership are insolvent, an assignment with preferences made in Georgia by a surviving partner, which does not on its face show the fact of such insolvency, is void.

2. SAME—SCHEDULE.

Under act Ga. Oct. 17, 1885, § 1, requiring that a person making an assignment with preferences shall attach to the deed a full and complete inventory and schedule of all debts, setting forth in detail the names and residences of all his creditors, and the amounts due them, the schedule must show the nature of each obligation, and not merely its amount.

In Equity. Bill for injunction and receiver.
*Alexander Proudfit,* for plaintiffs.
*Herdeman & Davis, Dessau & Bartlett* and *Bacon & Rutherford,* for defendants.

SPEER, J. The bill before the court is filed by the general creditors of the late firm of Winship & Calloway, to set aside an assignment made by Joel T. Calloway, surviving partner, with preferences to certain creditors. Emory Winship, of the firm, died on the 6th day of April, 1888. Six days thereafter Joel T. Calloway, as surviving partner, made what purported to be a deed of assignment to W. P. Baldwin, as assignee. The assignment conveyed to Baldwin, to be held in trust for certain preferred creditors, all the property of every kind owned, possessed, claimed, or to which the said firm of Winship & Calloway was in any manner entitled. It consisted of the stock of goods, principally ready-made clothing, hats, etc., store fixtures, furniture, safes, desks, claims, notes, books of accounts, and choses in action. The assignee was empowered to convert the assets into cash by making sales by wholesale or retail, or by public or private sale, as in his discretion will be for the best interest of the creditors of the said Winship & Calloway; and in like manner to collect up the accounts and choses in action by suit, by compromising the

same, or by making either private sale of the whole, or of any part thereof, as in his discretion may be best for said interests as aforesaid. The deed empowered the assignee to pay all expenses he may have incurred in executing the trust, including clerk's hire, rent, storage, etc.; to pay himself just and reasonable compensation, to-wit, 5 per cent. on the amount received and paid out; to pay Hardeman & Davis, of Macon, Ga., the sum of $500. It is not stated in the deed of assignment, or in the schedule attached, for what purpose this amount was to be paid. The other preferences to the Exchange Bank of Macon, $1,431.07; to Mrs. Lizzie A. Winship, $1,780 principal, and $2,249 interest; E. P. Strong, $832; to R. K. Davis the sum of $312.34; to A. W. Mann the sum of $309, with interest; August Bros., $897; Vorhis, Miller & Rupel, $1,326; C. B. Cowe, Son & Co., $54; J. A. Scriven & Co., $84; Gus Nussbaum, $36.50; Dayton & Close, of New York, $1,715.44; H. P. Brower, of New York, $305; W. P. Baldwin, $327.24. These are preferred creditors, and are to be paid in full, in the order stated. It is stated in the deed that a full statement of these debts are in the schedule attached. The debts of Mrs. Winship and Miss Wing are stated to be trust debts, due by Emory Winship, as trustee and guardian, respectively. The assignee is thereafter empowered, from the balance of the proceeds of the property and choses in action assigned, to pay the other creditors of Winship & Calloway, without preference, ratably in proportion to the amount of debt due each. Schedule B, annexed to the assignment, is stated to be a full and complete inventory of all the indebtedness, of every kind, of the firm of Winship & Calloway, at the time of the execution of the deed of assignment. Certain accounts are stated in this form:

| When Due. | Name. | Address. | Amount. |
| --- | --- | --- | --- |
| April 15th. | Trogan Shirt & Collar Co. | New York. | $634.50 |

Certain other debts are described as follows:

| Note.<br>April 28th. | Vorhis, Miller & Rupel. | Cincinnati, O. | $401.92 |
| --- | --- | --- | --- |

The debts more particularly described are as follows: March 15, 1886, Mamie Lee Wing, $700; being note payable to E. Winship, guardian; April 2, 1886, Mamie Lee Wing, $35.50. Mamie Lee Wing, balance due on ledger, $344.36. February 4, 1869, Lizzie A Winship, $1,500, —being note payable to E. Winship, trustee; credited May 22, 1876, $10; February 27, 1882, $5. April 5, 1874, Lizzie A. Winship, $280, —being note payable to E. Winship, trustee for wife; credited February 27, 1882, $5. Again: Exchange Bank, balance due on demand note, $168.36, November 4, 1886. May 17, 1888, to the same note, indorsed by L. W. Hert, $200. June 9, 1888, to the same note, indorsed by P. Cook, $150. Overchecks, $912.71. May 28, 1888, secured by Exchange Bank stock of E. Winship, $468.93; and June 27, 1888, $612.

L. A. Winship, due by cash-book, Macon, Ga., $40. Again: City taxes due the city of Macon for 1888, $175; state and county taxes not yet assessed.

It will be observed that there is a large class of debts in the schedule which have no other description save the date when due, the name of the creditor, his address, and the amount. Another large class is described in the same manner, save that the word "note" is written above the date. Another class, all of which have been herein set out with particularity, where the description gives some understanding of the nature and character of the debt. The preferences enumerated in the body of the assignment are described with but little if any more amplitude than in the schedule.

The averments of the bill charge illegality and fraud in the assignment, and that it is void as to the creditors. The answers deny the fraud, and the affidavits taken in support of bill and answers furnish no evidence to justify the charge of fraud or attempted deception set out in the bill. Indeed, it is rarely the case where the evidence offered upon the part of the plaintiffs, under averments of this character, is so significantly free from inculpatory facts. It is quite true that upon the *ex parte* showing of the creditors to their solicitor that the averments were proper and legitimate. It is equally true that the evidence leaves the good name of Winship & Calloway free from any imputation of intentional dishonesty. It was strongly insisted in the argument, by the solicitor for the plaintiffs, that under section 1907 of the Code of Georgia, and the cognate sections, a surviving copartner has no right to make preferences upon existing liabilities. It was replied that section 1907, which denies to the surviving partner the power to bind the firm by a new contract, or to revive one already for any cause extinct, or to renew an existing liability, or to change its dignity or its nature, was intended to operate and to be of effect between the partners themselves. Upon careful consideration, the court is of the opinion that the latter is the correct construction of the statute. It was further insisted that a surviving partner had no power to make an assignment with preferences under the general law and under the law of Georgia. This has long been a disputed question, but the weight of authority leads to the following conclusion: As a surviving partner has the entire title and sole control of the property, and represents the power of the former partners, and as they could have assigned the property for the benefit of creditors, so the surviving partner has, at least in case of insolvency, in order to wind up, the same power, and can transfer property to an assignee for the benefit of the partnership creditors. *Shanks* v. *Klein*, 104 U. S. 18; *Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. Rep. 981; 2 Bates, Partn. 732, and cases cited; Burrill, Assignm. § 89. It will be observed that all of these authorities and text writers stress with great care the limitations, of the power conceded. The general doctrine is accurately stated in Burrill on Assignments, *supra*, in the following language: "The supreme court of the United States has recently held that a sole surviving partner of an insolvent firm, who is himself insolvent, may make a general assignment

of all the firm's assets for the benefit of all joint creditors, with preferences to some of them." Citing *Emerson* v. *Senter, supra*. This, in the opinion of that court in *Emerson* v. *Senter*, Mr. Justice HARLAN rendering the decision, is stated with the additional proviso: "If the local law does not forbid." The law of Georgia authorizes, in certain cases, assignments by insolvent debtors with preferences to certain creditors. The act of the General Assembly of 1881 and the act of 1885, construed *in pari materia*, define and restrict the general power of assignment with preferences. This power it seems was more liberal before these enactments. The title of the act of September, 1881, (Laws Ga. p. 174,) is "An act for the better protection of creditors in cases of voluntary assignment by insolvent debtors." The act of October 17, 1885, is "An act defining voluntary assignments; also providing that a sworn schedule of creditors shall be filed with the deed of assignment, and giving jurisdiction to courts of equity." The supreme court of the state has repeatedly held that this legislation must be construed with great strictness as against the assignor, and in behalf of the creditors. In *Crittenden* v. *Coleman*, 70 Ga. 296, it uses this language: "The act of 1881 is a great remedial statute, and must be construed liberally in behalf of creditors, for whose protection it was enacted, and strictly against the debtor and assignee." In that case the schedule required by the statute had been made out and folded in the deed of assignment. The court held that, unless this schedule be attached to, not loosely folded with, the deed of assignment, the entire policy and force of the statute would be destroyed. To this extraordinary extent has the supreme appellate tribunal of the state gone in the effort to protect the general creditor against the power of the debtor to defeat the creditor's claim, or to prefer a favored creditor, whose demand upon the general principles of right and equity possesses no superior claim to satisfaction. In the well-considered case of *Turnipseed* v. *Schaefer*, 76 Ga. 109, the court says: "In concluding what we have to say on the law of this case, it may be well to remind the profession and the commercial community that, while preferences in assignments are allowed, they are tolerated rather than encouraged, as is manifest from the drift of our legislation from 1881 down to the present day." There they held that a schedule could not be amended, and that, since no assignment was valid which was not accompanied by a sworn schedule contemplated by law, the assignment was literally void. A very full schedule had been attached, but it was held not to be sufficient, and the supreme court say that the difference between a schedule which is not full and complete and no schedule at all is a difference in degree only, and should not vary the application of the rule prescribed by the statute. There are numerous cases of equivalent purport, but these cited are sufficient to indicate the construction placed upon this local statute by the supreme court of the state, and it is of course superfluous to say that, in the construction of a statute of this character, the federal court is controlled by the decisions of that tribunal.

Now, let us consider, and, if possible, determine, if the deed of assignment, with the schedule thereto attached, is sufficiently conformable to the

statute to withstand the assault which has been made upon it. In the first place, there is not anywhere in the deed or the schedules any affirmation or indication of the insolvency of the firm at the time of the assignment, or of the insolvency of the surviving partner, who, under the law of Georgia, (Code, 1907,) is primarily liable for the debts of the concern. It will be borne in mind that, under the general law, the surviving partner cannot assign unless the partnership estate is insolvent, and unless he himself is insolvent. To that extent only has the trustee of this class been permitted to escape a rateable distribution. Bates, Partn., *supra; Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. Rep. 981. The local law would seem to restrict assignments with preferences to cases of insolvency. There can be no doubt that this was the intention of the legislature in the acts of September 28, 1881, and October 17, 1885. In fact, the language of the last statute is expressly confined to assignments of insolvent persons, firms, and corporations, and it is an act defining voluntary assignments. It may be true that other assignments were permitted formerly, but it seems the right has been repealed. While repeals by implication are not favored, it is well settled that where two acts are not in all respects repugnant, if the latter covers the whole subject of the earlier, and embraces new provisions which plainly show that it was intended as a substitute for the first, it will operate as a repeal. *King* v. *Cornell*, 106 U. S. 396, 1 Sup. Ct. Rep. 312. It is contended by Mr. Davis, counsel for defendants, in his very able and candid argument, that the right of voluntary assignment existed prior to the legislation of 1881 and 1885. This is true, but these enactments, with the decision of the supreme court construing them, so limit and restrict the right of assignment with preferences that it would be difficult to draw an assignment with preferences to creditors by a solvent person which could receive the consideration of a court. If the person be solvent, preferences are altogether unimportant. ·The law is not concerned with questions about which there can be no disputed right and no occasion to invoke its interposition. Clearly, this assignment had in contemplation the acts of 1881 and 1885, the last of which is the conclusive definition of the general assembly of that degree of toleration extended to instruments of this general character. It would seem indisputable, upon a familiar principle of construction, that the instrument should conform to the statute. Now, it is true, as insisted, that a deed need not be in any particular form if substantially correct. This may not be denied, but when a deed or other draft of instrument or document is intended to conform to the statute it must substantially conform. If it be an affidavit to evict an intruder, it must be alleged that the offender is an intruder. If it be an affidavit to obtain an attachment, the grounds of attachment must be substantially set forth. If it be a proceeding by a person who relies upon the fact that he is a citizen of another state, it must be made to appear that he is such citizen. This principle is especially applicable where the statute is so strictly and rigidly construed in favor of general right and against actions in derogation thereof. Whenever an act is in derogation of common law, and should be strictly construed and strictly

pursued, the party seeking the benefit of it must bring himself clearly within not only the spirit and meaning, but the letter, of the act. He can take nothing by intendment. *Ball* v. *Lastinger*, 71 Ga. 678. After very careful consideration the court is very clear that since this law is so strictly and rigidly construed by the supreme court, since these assignments with preferences are regarded with great disfavor and merely tolerated, since they are in derogation of common right, and the common equity which every creditor has to an equal share of the assets of the debtor, that, adopting the policy of the decision of the supreme court as the rule, we must hold that every essential of the law is requisite and must be made to appear in the instrument. Since it does not appear that the late firm was insolvent, and that the surviving partner, as such, was insolvent, the deed must be held a nullity and of no effect.

It is true, however, that the assignment is void for another reason. Section 1 of the act of October, 1885, requires that a person making an assignment such as this must prepare and attach to the deed a full and complete inventory and schedule of all indebtedness of every kind of such insolvent person, firm, or corporation, at the time of the assignment, which inventory or schedule shall set forth in detail the names, all the amounts due, and the residence of each of the creditors of said assignor. The schedule attached to the assignment before the court fails utterly to comply with these requirements. It is not enough to set forth the names and residence of creditors, and the amount due each, but there must be a full and complete inventory and schedule of the indebtedness. Now, Schedule B, while it is headed a full and complete inventory and schedule of all indebtedness of every kind, is nothing of the sort. It is simply a statement of the amount of the debt, the date, name and residence of the creditor. In a few cases it appears that the word "note" is written above the date, but, with the exception of the debts to Miss Wing and to Mrs. Winship and to the Exchange Bank, there is nothing like a full and complete inventory of the debts. Not an item of account is specified. It might be argued that debts not specified as notes would be considered as accounts, but in a case of this sort, in the language of the supreme court quoted above, "nothing is taken by intendment," because the whole proceeding is in derogation of common right. Take, for instance, the demand of Messrs. Hardeman & Davis. We all know, because it has been developed in the evidence, that this was a fee as counsel for drawing the assignment, and perhaps for other legal services; but, so far as it appears from the face of the assignment or from the attempted inventory, it might be the price of a consignment of trowsers. It does not differ in any respect, save in amount, from the accounts of August Brother or of Gus Nussbaum, on the same page. This may seem a trivial criticism, but it is substantial and most important in the light of the repeated decisions of the supreme court of Georgia, and especially of the case of *Turnipseed* v. *Schaefer*, 76 Ga. 109, where, as already stated, they held "the difference between a schedule which is not full and complete and no schedule at all is a difference in degree only, and should not vary the application of the rule pre-

scribed by the statute." See, also *Fort* v. *Tobacco Co.,* 1 S. E. Rep. 223, (Oct. term, 1886.)

It is besides very strongly persuasive of the invalidity of this deed that there was a reservation of $500 for counsel fees for drawing the instrument and for other professional services to the assignor. The Code provides, § 1953*a*, "that an assignment by a debtor, where any trust or benefit is reserved to the assignor or any person for him, is void." This question was decided by the supreme court of Maryland as late as 1885, where they held, under a statute in some respects similar, "that an assignment for the benefit of creditors is rendered void by the reservation of a reasonable fee for drawing the instrument." *Wolfsheimer* v. *Rivinus,* 64 Md. 230. It is true that the Judges BRYAN and RITCHIE dissented, but the decisions of that court rank high as authority. It was certainly a benefit reserved to the assignor that he was thus enabled to compensate counsel whose work was essential to carry out his contemplated project. If he employed Messrs. Davis & Hardeman to draw the deed, in the absence of this reservation in the assignment he would have been bound to pay them for their services; therefore it was a benefit to him to be relieved from that obligation by that preference indicated in the deed.

For the reasons enumerated, the court, after much deliberation, is compelled to hold the assignment as null and void. The surviving copartner having parted with the actual custody of the stock, and confessing his inability to pay the debts, it would be under the general law a proper case for the appointment of a receiver; and under the Georgia statute of October, 1885, before adverted to, it is expressly provided that no creditor of a person, firm, or corporation, making an assignment for the benefit of creditors, shall be required first to reduce his debts to judgment before he shall be entitled to ask the remedial aid of a court of equity. The courts of equity of the United States can administer the right of the creditor to proceed without judgment, thus granted by the legislature of Georgia. It is therefore adjudged that an injunction be granted against the assignee, and others acting in concert with him, in accordance with the prayers of the bill, and that a receiver be appointed to wind up the affairs of the late firm of Winship & Calloway, and to settle with the creditors in accordance with the priority of their respective claims, under the direction of the court; and the cause will proceed regularly, as usual in equity.