JEREMIAH BULGER, APPLELLANT, *v.* ISAAC A. ROSA, SHERIFF OF THE COUNTY OF MONTGOMERY, RESPONDENT.

*Conveyance of firm property alleged to be fraudulent as favoring individual, as against firm creditors — when it presents a question for the jury.*

Sherlock & Bulger were merchants, carrying on business under that firm name. Sherlock conveyed all his undivided one-half interest in the real and personal property of the firm to Bulger, "subject to the payment in full of all the claims and demands * * * against the said firm of Sherlock & Bulger, which said claims and demands the said John Bulger does hereby assume and agree to pay." Bulger thereafter conveyed said property to one Jeremiah, subject to the payment of a mortgage upon the real property. The firm was indebted to Jeremiah to the amount of about $1,700, and Bulger was indebted to him in the amount of about $1,300. These two amounts constituted the consideration for these transfers to him. The property transferred was estimated as worth about $2,000.

In an action, brought by Jeremiah to recover a portion of this property which had been levied upon by virtue of a judgment and execution against Sherlock & Bulger:

*Held,* that Jeremiah was entitled to have the question submitted to the jury whether the transfer to Bulger had not been made only for the purpose and with the intent of enabling him to pay first what the firm owed Jeremiah and then what it owed other creditors.

*Burhans* v. *Kelly* (17 N. Y. St. Rep., 552); *Calkin* v. *Conner* (18 N. Y. Weekly Dig., 24) distinguished.

That the court was not justified in holding, as matter of law, that the conveyance to John Bulger was fraudulent.

That if the jury should have found that the debt owing Jeremiah from Bulger, individually, was a part of the consideration of the transfer, the firm creditors could only be injured to the extent to which the firm property transferred to Bulger was in excess of the amount of the indebtedness of the firm to him.

That if, in fact, the property transferred to Jeremiah was not of a value in excess of the debt owing to him by the firm, the firm creditors were not injured, although Jeremiah might have given up his claim against Bulger, individually, in order to induce him to pay the firm debt with the firm property. (LANDON, J., dissenting.)

APPEAL by the plaintiff from a judgment of the Supreme Court, rendered at the Montgomery Circuit, dismissing the complaint on the merits after a trial before the court and a jury, which judgment was entered in the office of the clerk of the county of Montgomery on the 30th day of June, 1888, and from an order denying the plaintiff's motion for a new trial made on the minutes of the judge,

which order was entered in said clerk's office on the 29th day of June, 1888.

*Matthew Hale* and *Z. S. Westbrook*, for the appellant.

*N. C. Moak* and *Edward J. Meegan*, for the respondent.

LEARNED, P. J. :

This is an action of replevin, brought to recover personal property alleged to belong to plaintiff and taken by the defendant by virtue of judgments and executions against John Sherlock and John Bulger. On the trial the court directed a verdict for the defendant and denied a motion for a new trial, and the plaintiff appeals. John Sherlock and John Bulger were merchants under the firm name of Sherlock & Bulger. They had some real estate ; their stock in trade and book accounts. By a bill of sale, dated June 15, 1883, Sherlock conveyed all his undivided one-half interest in all the personal property, including book accounts and choses in action of the firm to John Bulger " subject to the payment in full of all the claims and demands * * * against the said firm of Sherlock & Bulger, which said claims and demands the said John Bulger does hereby assume and agree to pay." By a deed of the same date Sherlock conveyed to John Bulger the real estate subject to the mortgage thereon, which John Bulger assumed to pay. On the 16th of June, 1883, John Bulger conveyed the real estate to plaintiff, subject to said mortgage which plaintiff assumed. He also at the same time conveyed to plaintiff all the personal property which had belonged to the firm, including choses in action ; and the plaintiff took possession June 18, 1883. He began to carry on business. The defendant by virtue of the aforesaid executions levied on the twenty-first. The firm was insolvent and so were each of the partners.

The firm was indebted to plaintiff to an amount of about $1,700. John Bulger was also indebted to the plaintiff to an amount of about $1,300. These two amounts constituted the consideration for these transfers to plaintiff. The stock on hand was estimated as worth about $1,500, the equity in the real estate about $500, though it afterwards sold for $1,000. There was subsequently collected from the book accounts $160.

The plaintiff testifies, substantially, that Sherlock said he wanted

to see the plaintiff paid, whether the others got their pay or not; that he would sell out the business to plaintiff that plaintiff might get his money. This remark might indicate that the transfer to John Bulger was made in order that he might secure plaintiff both what the firm owed plaintiff and what John owed plaintiff individually, or it might indicate that the transfer was made that John might pay plaintiff only what the firm owed him; and as the plaintiff was not allowed to go to the jury, he is entitled to the more favorable construction of this and of similar evidence. The jury might have found that the transfer to John was made only for the purpose and with the intent of enabling him to pay first what the firm owed plaintiff and then what they owed other creditors. And the court refused to submit this question to the jury. If they had found that such was the intent, we cannot see that that transfer could have been held fraudulent. This seems to be settled by the reasoning of the court in *Williams* v. *Whedon* (109 N. Y., 333); *Emerson* v. *Senter* (118 U. S., 3); *Crane* v. *Roosa* (40 Hun, 455).

Several English cases are cited to us by the defendant upon this point; but it must be remembered that in England there is a bankrupt law, and, therefore, preferences by insolvents are not lawful. With us it is different, and preferences are lawful; except as restricted by chapter 503, Laws of 1887; and, as the transfer by Sherlock to John Bulger was expressly made subject to the payment of all claims and demands against the firm, which claims and demands John Bulger agreed to pay, we do not see that it purported to convey anything but Sherlock's interest in the firm property after the debts were paid. The court refused to submit to the jury the question whether the sale by Sherlock was with intent to hinder creditors. If made in good faith, it passed the title to John Bulger. (*Stanton* v. *Westover*, 101 N. Y., 265, *Saunders* v. *Reilly*, 105 id., 18.)

It has been several times laid down that the right of creditors to have partnership property applied to partnership debts is derivative and is a subrogation to the rights of the partner; that if the property has become the several property of a partner or of a third person the equity is extinguished. (*Case* v. *Beauregard*, 99 U. S., 119; *Fitzpatrick* v. *Flannagan*, 106 id., 648.) Hence in *Saunders*

v. *Reilly* (*ut supra*), it is said that, even if insolvent, all the mem_
bers of a firm may sell the firm property to pay a joint debt for
which they are jointly liable *outside the business of the firm*, and
the joint creditor will obtain a good title to the firm property.  In
the present case, as the transfer to John Bulger was made subject
to the payment of the firm debts, it may be said that the equity of
Sherlock was not extinguished, and that the creditors of the firm
may be subrogated thereto.

The defendant cites the case of *Burhans* v. *Kelly* (17 N. Y. S.
Rep., 552) to show that Sherlock's act was fraudulent.  But in that
case the trial court found fraud as a fact.  So in *Calkin* v. *Conner*
(18 N. Y. Week. Dig., 24), the trial court refused to submit the
question of fraud to the jury.  As to the conveyance to John
Bulger, therefore, we do not think the court justified in holding it
fraudulent as matter of law.  It can hardly be urged that if John
Bulger turned out this property to plaintiff in payment for what
the firm owed him, the transfer would have been invalid.  If the
amount turned out were greater than the debt, this might indicate
fraud, or a creditor might probably recover the excess.  In the
present case if the jury had been allowed to pass on the question,
as requested by the plaintiff, they might have found that the value
of the property turned out to plaintiff was substantially equal to
the debt owing him from the firm.

There is evidence that the debt owing plaintiff from John Bulger,
individually, was a part of the consideration.  Of course, in equity,
John Bulger had no right to pay his own debt with this firm prop-
erty to the injury of firm creditors.  But firm creditors could only
be injured to the extent to which he used firm property in excess
of the firm debt.  If the property turned out to plaintiff was not
in excess of the debt owing him by the firm, the firm creditors
were not injured.  The surrender by plaintiff of his claim against
John Bulger did no harm to the creditors of the firm.  The
plaintiff might lawfully give up his claim against John Bulger, in
order to induce him to pay the firm debt with the firm property.
And the plaintiff had a right to have submitted to the jury the
question whether the firm debts were a full and fair consideration
for the property purchased.

Another question may arise, and that is, whether, if the property transferred by John Bulger to plaintiff was in excess of the debt owing him from the firm, the transfer was entirely void or only void for the excess. *Wilson* v. *Robertson* (21 N. Y., 587) was a case where an assignment by partners gave the first preference to individual debts, and this was held to be void. But that was on the ground that such preference gave a benefit to the individual partners out of the firm assets before any firm creditors were paid. The provisions of the assignment must be followed or else it must be set aside. The present is not that case. John Bulger with assets of the firm has paid a firm debt. With assets of the firm he has also (on this supposition) paid an individual debt. It matters not that he did these two acts by one conveyance. The extent of the injury to the firm creditors (if any) is only the excess of the property transferred above the firm debt. No intentional fraud is proved. And in this State fraudulent intent is a question of fact, not of law. (2 R. S., 137, § 4.) The rights of the firm creditors, as above shown, is a derivative right coming from the right of Sherlock. Sherlock could insist only that the excess above what the firm owed the plaintiff had been applied contrary to the terms of the transfer made by Sherlock to John. Up to the amount of the firm debt the property was applied according to the terms of his transfer.

The judgment should be reversed, new trial granted, costs to abide event.

· INGALLS, J.. concurred.

LANDON, J. (dissenting):

If the jury had been permitted to find that the intent of the transfers was, first, to pay the plaintiff the firm debt due him, and, second, the other firm creditors, in preference to the individual debt of John Bulger, they would have been permitted to find a verdict against the clear weight of the evidence. The plaintiff, as a last extremity, seeks refuge under this palpably false pretense. It should not avail him. He intended to protect not only his claim against the firm, but against the individual members of it. The whole consideration is tainted by the vice of the attempt to apply firm property in satisfaction of an individual debt, and the title of the

plaintiff resting upon that vice fails as against the defendant, who represents firm creditors.

I advise an affirmance of the judgment.

Judgment and order reversed, new trial granted, costs to abide event.