TITMAN *et al. v.* TWELFTH WARD BANK *et al.*

(*Supreme Court, General Term, First Department.* December 29, 1890.)

1. PARTNERSHIP—SURVIVING PARTNER—INDIVIDUAL DEBTS.
   After the death of one of two partners, who had a contract to do work for a city, the surviving partner made an assignment absolute in form of the money retained by the city on the contract to a bank, which advanced money to him for the prosecution of the work. He thereafter assigned the contract to others, subject to the assignment to the bank, and these assignees made a further assignment, also absolute in form, to the bank, on which it made further advances to them for the same purpose. The bank claimed that advances made by it to the surviving partner individually were also secured by the assignments; but the testimony of its president and attorney that such an agreement was made was contradicted by that of all the other parties, who were corroborated to some extent by documentary evidence and circumstances. *Held,* that the decision of the trial judge rejecting such claim should be sustained on the evidence, and on the ground that the surviving partner had no authority to appropriate the money to his individual debt, and that this appeared on the face of his assignment.

**2. TRIAL BY COURT OR JURY—EQUITABLE ACTION.**

In an action by assignors of a contract to do certain work for a city to recover money due thereon in excess of the indebtedness as security for which the contract was assigned, the city was made a party, as well as the assignee, and an injunction was asked to restrain it from paying over to the assignee money which the city held, owing on the contract. *Held,* that the case was one of equitable jurisdiction, proper for trial before the court instead of by a jury.

Appeal from special term, New York county.

Action by James B. Titman and another, as administrators of Thomas O'Maley, deceased, against the Twelfth Ward Bank of the city of New York and the mayor, etc., of the city of New York. The defendant bank appeals from a judgment for plaintiffs entered on trial by the court without a jury.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Charles W. Dayton,* (*Wheeler H. Peckham,* of counsel,) for appellant. *Kellogg, Rose & Smith,* (*L. Laflin Kellogg,* of counsel,) for respondents.

DANIELS, J.    On or about the 16th of December, 1884, Thomas J. Allen and Thomas O'Maley, who were engaged in business as partners and contractors, received a contract from the city of New York for regulating and grading the Fort Washington Ridge road, for which they were to receive the sum of $164,934.95    They jointly commenced and proceeded with the performance of the work until on or about the 21st of January, 1887, when O'Maley departed this life, intestate.    The survivor, Thomas J. Allen, continued in the performance of the work, and in or about the early part of May, 1887, applied to the president of the Twelfth Ward Bank for the advancement of money to be used in the continuance of the performance of the agreement.    After a short delay the bank, by its officers, agreed to aid the surviving contractor in this manner, and on the 18th of May, 1887, he, as surviving partner of the firm, assigned and set over to the bank the sum of $40,837.30, being the amount of 30 per cent, retained by the city upon the contract.    This assignment was absolute in form, containing no reference to what was stated to be the object of the dealings with the bank.    But in support of the action by the plaintiffs, as the personal representatives of the estate of O'Maley, and finally as assignee of Allen himself, it has been alleged that the assignment was made only to secure an advance to Allen as the surviving partner, not exceeding the sum of $10,000, and that no more than the sum of $8,475.24, including interest, was owing to the bank for advances made to Allen upon the security of this assignment.    This, however, was controverted on the part of the bank, which claimed the right to hold the assignment, and resort to the proceeds of the contract to reimburse itself for advances which had been made by way of discounting notes for Allen himself, individually, and amounting to near the sum of $12,000.    Allen became insolvent, and on the 31st of January, 1888, he assigned all moneys due or to grow due by virtue of the contract to Hugh Allen and James B. Titman. This was declared in the assignment to be subject to the preceding assignment to the bank to secure the payment of a loan of $10,000, of which about $8,000 had been received.    These assignees, for the purpose of obtaining money to proceed with the performance of the contract, on the 19th of June, 1888, executed and delivered a further assignment to the bank, which was in like manner absolute in its form, but which, as a matter of fact, was to be by way of security only for the moneys which the bank should advance to these assignees to enable them to proceed with the performance of the contract.    The officers of the bank contested this view, claiming the assignment to have been received by it with the agreement that the preceding advances made by it to Allen individually should be added to the amount loaned to him as surviving partner, and should in like manner be secured by his assignment.    After that, and in April, 1889, Thomas J. Allen, as surviving partner, James B. Titman, and Hugh Allen severally executed and delivered

a still further assignment to James B. Titman and Sarah O'Maley, assigning all their right, title, and interest in the contract and to any claims existing against the bank. This assignment has no date, but it is stated to have been acknowledged on the 4th of April, 1889; and from that circumstance it is apparent that it preceded the commencement of the action, for the summons bears date upon the next day.

There was no dispute as to the amount of money which had been paid for the services performed under the contract, nor as to the amount which the bank had advanced to Allen as the surviving partner of the firm, nor concerning the amounts which it had advanced to Titman & Allen, nor as to the amount still remaining unpaid from the city upon the contract; neither was there concerning the sums which had been loaned to Allen on the paper discounted for him individually. If the bank was entitled to charge these discounts against the assignment made to it by Allen, then it was not indebted to the plaintiffs, and they had no right to maintain this action against it. But if the bank was not entitled to charge the discounts made for Allen individually, then it was indebted, as the fact has been found by the court, over and above its advances to Allen & Titman for the continuance and completion of this work, in the sum of $7,947.36, and there still remained unpaid by the city upon the contract the sum of $6,363.75. The controversy, therefore, upon which the determination of the action depended was whether the bank had the right to charge the advances or discounts made to Allen individually against the money it received from the city upon the contract by virtue of the assignments made to it. It was alleged in the complaint that the bank received the assignment from Allen as security only for the moneys to be advanced to him to proceed with the performance of the contract with the city; but this was denied by the bank in its answer, which alleged that it was agreed with Allen and with Titman & Allen that it should also hold these moneys, and apply them to the satisfaction of Allen's individual account; and which of these parties were correct under the issue was the paramount dispute, to the development of which evidence was given upon the trial. Allen himself testified that he applied to the bank to loan money upon the contract to supply him with funds to proceed with the work, and that this was the extent to which it was proposed to assign the contract to the bank, and that no agreement was entered into between himself and the bank by which it was to hold the proceeds of the contract in any manner for the satisfaction of his individual account. Mr. Titman gave substantially similar evidence relative to what took place prior to and at the time when Titman & Allen made their assignment of the contract to the bank, and that the object of making it was to secure the bank for such advances of money as should be made for the completion of this work. Upon these subjects their evidence was quite explicit and direct; and the testimony of Allen was, to say the least, to a slight extent corroborated by the fact that the bank opened two accounts with him,—one individually, and the other for the firm. And it also appeared that the first discount obtained by him individually was for the sum of $6,899.96, on the 14th of May, 1887, which was four days before the assignment executed by him of the contract. The president of the bank, and also its attorney, each testified that it was agreed with Allen, as well as with Titman & Allen, that the bank should reimburse itself out of the moneys received upon the contract to the extent of its account against Allen individually. In answer to this evidence, Hugh Allen, Thomas J. Allen, and James B. Titman directly contradicted these witnesses, stating that no agreement or understanding was entered into under which the bank should be at liberty to apply the proceeds of the contract to the satisfaction of Allen's individual account; and the testimony finally was that no claim of this nature was presented on behalf of the bank until the 23d of March, 1889, and that then it was declined, and a suit threatened to prevent this diversion of the funds

which had been received. There was some further evidence tending to confirm the correctness of that given by the witnesses examined on behalf of the plaintiffs, for it was stated that Titman & Allen were requested to acknowledge in writing this right on the part of the bank, but which they omitted to do. So it was stated in the assignment from the surviving contractor to Allen and Titman that the preceding advances of the bank amounted to about the sum of $8,000, and this had been brought to the attention of the bank. But, without placing any substantial weight upon these collateral matters, it is sufficient to say that the evidence as to the agreement made between Allen and the bank, and between Titman & Allen and the bank, presented a question of fact to be determined by the court before which these witnesses' had been examined and gave their testimony. And, after considering the evidence of the witnesses, the judge presiding at the trial found as a matter of fact that no agreement at any time was made by either of these parties that the bank should be at liberty to use the proceeds of this contract for the satisfaction of the individual account or liability of Allen, but that the agreements made were that the bank should hold these respective assignments only as security for its advances, and a means of reimbursing the amounts loaned by it for the work of completing this contract; and that there was no agreement at any time that the loans or discounts made to Allen upon what has been called the "De Forest.Paper," brought by him to the bank, should be paid out of the proceeds of the work. It has been stated in the points by the counsel that there was no evidence which tended to show that every dollar obtained from the bank had not been used for the benefit of this estate; but in that statement the counsel is very manifestly in error, for Allen testified upon his redirect examination that "there was not a dollar of this money obtained on these De Forest notes that were discounted ever used in Allen & O'Maley's works, or any of their works." The point was therefore directly presented to the court by the evidence whether this individual account, as an individual debt of Allen, should be allowed to the bank or not. And in rejecting its claim, which depended wholly upon the agreements alleged to have been made in the answer, it was sustained by the evidence given upon the trial; and, in the absence of the existence of the agreements alleged by the defendant, it had no right or authority to apply any portion of the moneys to the extinguishment of Allen's individual account. *Wyckoff* v. *Anthony,* 90 N. Y. 442. When it failed to establish these agreements it necessarily failed in the defense relied upon for its right to make this use of so much of the money received from the city upon the agreement with it. A further obstacle also stood in the way of that application, arising out of the fact that the assignment made by Allen to the bank disclosed the facts of the contract with the city having been made with the firm of Allen & O'Maley, and that he himself acted in making the assignment as the surviving partner of this firm; and as such surviving partner he had no authority, if he had been so disposed, to appropriate these moneys to the payment of his individual account. What the law required of him was to devote the proceeds of the agreement solely to the advancement of the interests and the extinguishment of the liabilities of himself as surviving partner of this firm. *Sage* v. *Woodin,* 66 N. Y. 578. And as much as that was fully conceded by the court in deciding the case of *Williams* v. *Whedon,* 109 N. Y. 333, 16 N. E. Rep. 365. And in the cases referred to, where the action of the surviving partner in transferring the property of the firm was sustained, it was done for the benefit of the firm itself, or for his benefit necessarily as surviving partner. *Haynes* v. *Brooks,* 42 Hun. 528; *Emerson* v. *Senter,* 118 U. S. 3, 6 Sup. Ct. Rep. 981. It is not necessary, however, to pursue this subject, for, as long as the bank received each of these assignments as security only for the money advanced in the first instance to Allen as surviving partner, and to Titman & Allen afterwards, as his assignees, it had no right or authority to use

any part of the proceeds of the contract with the city for the satisfaction of Allen's individual account.

At the commencement of the trial the objection was taken, which, however, has not been insisted upon in the argument, that the action was one for trial by a jury. But this objection is deprived of support by the fact that the city was made a party, and a portion of the relief was that it should be enjoined from paying over to the bank any part of the balance of the money still owing upon the agreement. And as a matter of fact it appeared that the city held this money for the benefit of either contestant who should be finally adjudged entitled to receive it. The plaintiffs have obtained that judgment, and this was so much an object of equitable jurisdiction as entitled the plaintiffs to try the action before the court instead of before a jury. There is no ground upon which this judgment can be disturbed. It may have proceeded further than the plaintiffs strictly had the right to go in directing the cancellation and restoration of the two assignments to the bank. They were its vouchers, under which its business with these parties had been carried on, and which it was entitled to retain as a part at least of the foundation of the business; but as to this no objection has been raised by the counsel in the case, and the judgment should be affirmed, with costs. All concur.