## DAKOTA TRUST & SAVINGS BANK OF SIOUX FALLS, S. D., v. HANSON.

### In re TORNBERG.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1925. Rehearing Denied July 31, 1925.)

#### No. 6714.

**1. Partnership ⟳282—Property held to become individual property of partner on withdrawal of other member of partnership.**

Partnership property *held* to become individual property of partner, who, pursuant to dissolution agreement, assumed all of partnership debts on withdrawal of other partner.

**2. Bankruptcy ⟳188(3)—Partnership creditor held not entitled to equitable lien on property of partnership after dissolution and bankruptcy of partner who acquired partnership interests.**

Where creditor of partnership, with knowledge that it was insolvent, acquiesced in dissolution agreement whereby one partner withdrew and then loaned money to remaining partner for use in continuing business, it was not entitled, when such partner subsequently sold business and went into voluntary bankruptcy, to equitable lien on property which had belonged to old partnership.

**3. Partnership ⟳180 — Partnership creditor has no specific lien on partnership assets.**

Partnership creditor has no specific lien on partnership assets, even while they continue to belong to partnership.

**4. Partnership ⟳180—Creditor's right by subrogation to have partnership assets applied to firm debts cannot be recognized until property is in custodia legis for administration.**

Partnership creditor may be subrogated to partner's equitable right to have firm assets applied first to payment of firm indebtedness, but such right cannot be recognized or enforced until property is in custodia legis for administration or distribution.

**5. Subrogation ⟳35—Subrogation is an equitable right, which may be waived or barred by laches.**

Subrogation is an equitable right, which may be waived or barred by laches.

**6. Fraudulent conveyances ⟳47—Bulk Sales Law held inapplicable to transfer of partnership assets to one partner on dissolution.**

Where one of two partners, by assuming partnership debts on withdrawal of other partner, acquired title to partnership property, *held*, South Dakota Bulk Sales Law did not apply, so as to avoid transaction or affect partner's title to property.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

In the matter of the bankruptcy of E. R. Tornberg; Harry N. Hanson, Trustee. From an order holding attachment levies

void, the Dakota Trust & Savings Bank of Sioux Falls, S. D., appeals. Affirmed.

E. O. Jones, B. C. Matthews, J. H. Fitzpatrick, T. G. Owen, and Odean Hareid, all of Sioux Falls, S. D., for appellant.

Before SANBORN and LEWIS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge. This is an appeal from an order holding attachment levies made within four months of bankruptcy adjudication to be void under section 67 of the Bankruptcy Act (U. S. Comp. St. § 9651), and directing that the property levied upon be delivered to the trustee of the bankrupt estate.

From March 15, 1922, up to August 1st of that year the bankrupt, E. R. Tornberg, carried on an automobile business in a rented garage at Sioux Falls, S. D., where he did repair work and kept a stock of supplies for that purpose, made charges for the storage of automobiles and sold new ones when he could find a purchaser. On the last-named date he sold out his business, and on October 20, 1922, went into voluntary bankruptcy. He was insolvent. The business up to March 15, 1922, had belonged to and had been carried on by him and H. C. Lembkey as partners. On that day the partnership was dissolved by written agreement, Lembkey withdrew as a partner and transferred to Tornberg all of his interest in the partnership business, its property and good will. He received nothing from Tornberg on dissolution except Tornberg's assumption of the firm's debts and his promise to pay them, and he gave Tornberg his note for money he had taken from the partnership. After dissolution, which was duly published, the business was at once taken over by Tornberg.

[1-3] The firm was indebted to appellant bank, it was insolvent and the bank knew it was insolvent. It appears to have been the desire of the bank officials, as well as of Tornberg, that Lembkey should get out and that some one else be found to go in with Tornberg. Its officers had discussed this plan before the dissolution agreement was drawn. Its vice president was present when the agreement was executed, and immediately thereafter a copy of it was delivered to the bank. In the following month the bank loaned Tornberg $1,000 to be used by him in carrying on the business. It continued, however, to hold the firm's notes for the partnership indebtedness, and on August 2d, the day after Tornberg sold out, it sued in the State Court on those notes, got out a writ of attachment and served garnishments on the purchaser from Tornberg, who had not paid over the purchase price for the business, and also on others who were debtors to the old firm. These levies were held to be void by the Bankruptcy Court. Under the dissolution agreement by which Lembkey transferred all of his interest in the partnership property to Tornberg that property thereupon became the individual property of Tornberg. Sargent v. Blake, 160 F. 57, 87 C. C. A. 213, 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58; Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370; Fitzpatrick v. Flannagan, 106 U. S. 648, 1 S. Ct. 369, 27 L. Ed. 211; Crawford v. Sternberg, 220 F. 73, 135 C. C. A. 641; Titus v. Maxwell (C. C. A.) 281 F. 433; Stringer v. Stevenson, 240 F. 892, 899, 153 C. C. A. 578. The property being that of Tornberg individually when the garnishments were served, the adjudication that he was bankrupt within four months thereafter rendered those levies void. This is not seriously refuted, but the bank claimed on the hearing in the court below and now contends that inasmuch as part of the property sold by Tornberg had belonged to the partnership, it, as a creditor, was entitled to a preference in payment of its claim out of that property, and it objected to being classed as a general creditor of the bankrupt estate. It says it has an equitable lien on all of the property which had belonged to the old partnership. But such a creditor has no specific lien upon partnership assets, even while those assets belong to the firm. Emerson v. Senter, 118 U. S. 3, 17, 6 S. Ct. 981, 30 L. Ed. 49; Peck v. Jenness, 7 How. 612, 620, 12 L. Ed. 841; Hollins v. Coal & Iron Co., 150 U. S. 371, 385, 14 S. Ct. 127, 37 L. Ed. 1113.

[4] Through the equitable right of a partner to have firm assets applied first to the payment of firm indebtedness a firm creditor may be subrogated to that equity when firm assets are brought into a court of equity for administration. This equitable right, however, cannot be recognized and enforced until the property is in custodia legis, for administration and distribution between conflicting claimants. Case v. Beauregard, supra. The writ of attachment sued out by appellant was not an enforcement of this right. Levies made under it created statutory liens and withheld the property levied upon from the Bankruptcy Court, a court of equity in which appellant's claimed right of preference might be recognized and granted, if there were no valid objections to the granting of such relief. Relief of that character

has been granted by Bankruptcy Courts, but under facts and circumstances that do not prevail here. In re Filmar, 177 F. 170, 100 C. C. A. 632; Rapple v. Dutton, 226 F. 430, 141 C. C. A. 260. In the Filmar Case the rights of third parties had not intervened when relief was sought, all of the property scheduled by the bankrupt partner who continued the business had been property of the partnership, and the retiring partner joined the firm creditor in asking that a preference be given him against firm assets. In the present case none of those facts appear. Between March 15th and August 1st substantial changes from conditions that prevailed on March 15th had taken place, additional property had been bought by Tornberg on credit extended to him and mingled with the old stock, and Tornberg had incurred other indebtedness in carrying on the business. In Rapple's Case he, as the retiring partner, asked for an order on the trustee compelling him to apply the partnership assets to the payment of a firm debt.

[5] But again, the facts in that case and the principle on which the court seems to have rested its conclusion are so unlike this situation and the principles applicable here that we think it has no application. The conclusion in that case was put upon the ground that a transfer by a partner of his interest in an insolvent concern was in fraud of the firm creditor. But the creditor there had not, as the creditor here had, participated in the transfer. Here appellant bank knew that the partnership was dissolved and that Tornberg was to continue the business. It acquiesced, evidently believing that it would be to its interest to get Lembkey out, and it loaned Tornberg $1,000 to be used by him in continuing the business in his individual name, knowing that changes would thereafter be made from day to day in the relation of that business to third parties. Tornberg contracted indebtedness in continuing the business, which was unpaid when he became bankrupt. Subrogation is an equitable right, which one may waive or bar himself by laches from asserting. In Ward v. Sherman, 192 U. S. 168, 177, 24 S. Ct. 227, 229 (48 L. Ed. 391) it is said that laches is " * * * principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties. * * * " In other words, where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without do-

ing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect."

Furthermore, it is said in Case v. Beauregard, supra, and reannounced in the Fitzpatrick and Huiskamp (121 U. S. 310, 7 S. Ct. 899, 30 L. Ed. 971) Cases, that: "It is indispensable, however, to such relief, when the creditors are, as in the present case, simple-contract creditors, that the partnership property should be within the control of the court and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in custodiam legis. Other property can be followed only after a judgment at law has been obtained and an execution has proved fruitless. So, if before the interposition of the court is asked the property has ceased to belong to the partnership, if by a bona fide transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is, therefore, always essential to any preferential right of the creditors that there shall be property owned by the partnership when the claim for preference is sought to be enforced." And so, on this branch of the case we think the claimed equitable right did not exist at the time the bank undertook to assert it.

[6] It is further claimed by appellant that because the requirements of the Bulk Sales Law of South Dakota (Rev. Code 1919, § 914 et seq.) were not complied with when Lembkey, on March 15, 1922, transferred his interest in the partnership property to Tornberg, that transaction was void and title to the property of the partnership continued to remain in it. Brown v. Kossove, 255 F. 806, 167 C. C. A. 134; William Tackaberry Co. v. German State Bank, 39 S. D. 185, 163 N. W. 709; Butler Bros. v. Mason (S. D.) 198 N. W. 560, are relied on. Under the Bulk Sales Law every purchaser in bulk of a stock of merchandise and fixtures is required to give notice personally or by registered mail to each of the creditors of the seller that he is about to purchase or trade for the stock. The seller must furnish to the purchaser a list of his creditors and the no-

tice given by the purchaser must be served not less than seven days prior to payment of the purchase price. The purchaser is made a trustee of the amount he agrees to pay for the use of the seller's creditors until the law is complied with, and thereupon he becomes a purchaser in good faith. In two of the cases relied on there were sales in bulk of stocks of merchandise, in the other there was an exchange of a stock of merchandise for land, and in none of them was the requirement as to notifying creditors complied with. In each the purchaser was held liable as trustee to the creditors—for the purchase price in two cases, and for the value of the land in the other. Perhaps the principal reliance of appellant is on the statement of this court in Brown v. Kossove, supra, that a sale made without compliance with the law is a void sale. But acceding to all that is claimed by appellant, based upon those cases, we fail to see that any of the principles which they declare have application here. We do not believe the Bulk Sales Law can be applied to the transaction between Lembkey and Tornberg. At that time the partnership owned the business and property. It was not owned by either of the partners individually. If one or both of the partners, acting for the partnership, had made a sale of all of the property to someone else, it will be conceded that the transaction would have come within the terms of the law relied upon, and partnership creditors would have had the remedial rights given by the law. But no such sale as that, no sale in bulk, was made. Lembkey retired from the business as a partner, in consideration of Tornberg's agreement to assume and pay the firm's debts. He was not paid anything by Tornberg, Tornberg did not agree to pay him anything, and did not become a trustee for partnership creditors. We are not able to see how the requirements of the law could be applied to that transaction in behalf of the bank as a creditor of the partnership. If the bank has a case under that law it would have to put itself in the attitude of a creditor of Lembkey as seller, and its relief, given by the law, would be sought against Tornberg and his property as purchaser. But Tornberg held no purchase price in trust for any one's creditors, nor did he purchase a stock of goods in bulk from the owners. The sole purpose of that law is to protect creditors of the vendor, and no one else is in a position to make complaint.

Affirmed.