SAMUEL WOLFSHEIMER *vs.* DAVID C. F. RIVINUS and
THOMAS H. LANGFORD, trading as RIVINUS &
LANGFORD.

*Deed for the Benefit of Creditors—Preference—Act of* 1884,
*ch.* 295.

The reservation in a deed for the benefit of creditors, of a reasonable
fee for the preparation of the deed, is such a preference as is for-
bidden by the Insolvent Act of 1884, ch. 295, and avoids the deed.

APPEAL from the Court of Common Pleas.

This proceeding was instituted in the Court of Com-
mon Pleas by the filing of a petition, by the appellees,
creditors of the appellant, praying the Court to adjudicate
the appellant an insolvent. The petition showed that the
petitioners were residents of the City of Philadelphia,
and were creditors on open account of Samuel' Wolfs-
heimer to the extent of $427.25, upon a purchase made
on the 22nd of July, 1884, and that on the 9th of August,
1884, said Wolfsheimer, being then insolvent, and a mer-
chant, manufacturer or trader, did make to Fielder C.
Slingluff, of Baltimore, a conveyance or deed of all of his
estate and property, which deed was the same day re-
corded, whereby the said Samuel Wolfsheimer created a
preference. Whereupon the petitioners prayed the Court
to declare and adjudicate said Wolfsheimer an insolvent,
and that such further and other proceedings might be
had as the Code of Public General Laws of Maryland
relating to insolvents prescribed. The petitioners filed a
copy of the deed to F. C. Slingluff, and the preference
alleged as the foundation for the petition was contained
in the following paragraph in the deed: "with the pro-
ceeds of said sales and collections, the said trustee shall

Wolfsheimer *vs.* Rivinus and Langford.

first pay and disburse all the lawful expenses, costs, and charges of executing and carrying into effect this trust, *including a reasonable fee for the preparation of this deed."* In the opinion filed by the Court (STEWART, J.,) sitting in insolvency, it was said, "in the opinion of the Court, a fee for the preparation of the deed of trust having been earned before the execution of the deed, is a preferred debt not authorized by law, and no matter how meritorious the services, the attorney must stand on the same footing as any other creditor."

The Court thereupon passed an order, adjudicating Wolfsheimer an insolvent, and declaring the deed void, and appointing William J. O'Brien, preliminary trustee. From this order Wolfsheimer appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*Fielder C. Slingluff*, and *Randolph Barton*, for the appellant.

The provision made for a reasonable fee for the preparation of the deed was not a preference, such as the insolvent law contemplates, and is not obnoxious to the letter or spirit of the law.

The Legislature has never yet required that an insolvent debtor should resort to the insolvent Court as the only means of distributing his property. Indeed, looking to the interest of creditors, an assignment is preferred as not releasing the debtor from future demands for balance of claims.

One of the modes provided by the laws of this State for the distribution of an insolvent's estate, and commended by the highest Court of the State, is the very mode adopted in this case by the appellant, viz., a deed of trust for the benefit of creditors, without preferences, and not exacting releases.

If then this right is guaranteed to an insolvent debtor, has he not the right to employ the necessary professional skill to enable him to avail himself of it? Can it be denied that a debtor desiring thus to dispose of his estate, can, without violating the insolvent law, *bona fide* from his deposit in bank, pay for the draft of a deed?

It seems to have been admitted by the appellees that such a payment would have been unobjectionable, and indeed this must needs be so, for otherwise we would have the law giving him the right to make the deed, and yet, denying his right to pay for the labor and skill involved in its preparation. It is manifest that unassisted by professional knowledge, it was not in his power to do what was proper to be done, what he did do, and what the law commends.

If then it is granted, that he has the right to make such a deed, and to pay for it in cash, or by check upon its completion, why is it, that instead of raising the cash immediately upon the completion of the instrument, he cannot lawfully provide that the cash shall be raised a little later, by directing his trustee to pay it? If lawfully he can draw a check and pay the money when the deed is handed him by his attorney, he can give goods in payment; and if he can do this he can give goods as a pledge for payment. If he can give goods he can pledge any portion of his estate, or all, instead of paying cash. This is substantially what the appellant did, apparently not having the ready money with which to pay the fee, and not desiring to pledge his property, by doing what he might have done, *i. e.,* bringing up a bale of goods and delivering them to his attorney; he simply pledges the money arising from the sale of his estate generally, to the payment of the services thus rendered. *Vide, Bump on Bankruptcy,* 10th *Ed., page* 250; *In re Keifer,* 4 *B. R.,* 389; *Lyons vs. Marshall,* 11 *Barbour,* 241; *Flournoy vs. Newton,* 8 *Georgia,* 306; *In re Rosenfield,* 2 *B. R.,* 117; *In re James Thompson,* 13 *N. B. R.,* 300.

The Court below erred in denominating the fee in question an antecedent debt. Neither a payment in cash for services performed, nor security given contemporaneously, constitute a preference. The preferences at which the law aims can only arise in the case of an *antecedent* debt. A decided principle pervading the bankruptcy decisions is, that debts may be paid or secured by the bankrupt, contemporaneously with their creation. *Bump on Bankruptcy*, 10*th Ed.*, *pages* 250 and 823 ; *Cook vs. Fallis*, 18 *Wallace*, 340 ; *Tiffany vs. Baltimore Institution*, 18 *Wallace*, 375, 9 *B. R.*, 252 ; *Clark vs. Iselin*, 21 *Wallace*, 369, 9 *B. R.*, 19 ; *Burly vs. Wells*, 61 *Ill.*, 59 ; *In re Morrison*, 11 *B. R.*, 115 ; *Pissor vs. Baldy*, 10 *B. R.*, 118.

It is idle to say that the services of the attorney beginning with the inception of the deed and continuing to the supervising of its final record, were not contemporaneous with the deed itself. They were not finished until the deed was filed for record, and the end of the services, and the attaching of the lien therefor, happened at the same instant, to wit: when the Clerk of the Superior Court marked the date of the recording.

The deed provides for the ordinary expenses incident to the trust, and necessary to its execution. It was necessary not only for the debtor and grantor to execute, but also for the grantee and trustee to accept the delivery thereof on behalf of the creditors. The services may therefore be considered as rendered to the trustee for the benefit of the general creditors, and therefore a charge upon the trust estate ; when the trustee agrees to act he has the right, and it is his duty, to have a deed properly drawn, conveying the property to him. And why is such a service as this, without which the trust could not be created, not to be borne out of the funds as part of the legitimate expenses of the trust ? Such a charge is a proper part of the expenses of the estate. *Butt vs. Peck*, 1 *Daly*, 84 ; *Bump on Fraudulent Conveyances*, (*Attorney's Fees*,) *p.*

425; *Iselin vs. Dalrymple*, 27 *Howard, P. R.*, 142; *Holstead vs. Gordon*, 34 *Barbour*, 422; *Campbell vs. Woodwater*, 33 *Barbour*, 425.

No particular amount is fixed for said fee; it cannot be unreasonable, for the whole matter is left to the Court supervising the trust, and ample opportunity is afforded the creditors to resist even any allowance at all. If it is an unlawful preference it is a mere nullity in the deed, for the language of the same is, "shall pay all *lawful* expenses," and "without any priority or preference, save that which the *law allows.*"

The Court below had no jurisdiction to set aside the deed. Because the trustee having an individual beneficial interest therein, (*National Park Bank vs. Lanahan*, 60 *Md.*, 477, &c.) was not a party to the proceedings. *Syester, Trustee of Cushwa vs. Brewer*, 27 *Md.*, 288.

Even if there is a preference, the deed is only void as to that part. In the case of *McIntosh, Garnishee vs. Corner*, 33 *Md.*, 607, a deed containing fraudulent preferences under the Statute of 13 Elizabeth, was held to be void only as to such preferences. The language of that Statute is even stronger than the 13th section of our Insolvent Act. The Court in that case said: "But it by no means follows that because some of the preferred debts may be fraudulent, and therefore void, that the assignment itself, intended as it is for the benefit of all the creditors, should be declared a nullity. Some of the debts claiming priority of payment may be founded in fraud, and still the general assignment be good as to all debts that are *bona fide.*"

Here, by parity of reasoning, if a fee to the attorney drawing the deed be illegal, the Court will not allow it; the assignee and general creditors may contest it, and no harm can possibly be done.

The attorney employed to draw the deed, is an *employé* within the saving of preferences allowed in the 13th section of the Insolvent Law.

Wolfsheimer *vs.* Rivinus and Langford.

*Henry D. Loney,* and *William J. O'Brien,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The sole question in this case is, whether the reservation of a reasonable fee for the draughtsman of the deed, for its preparation, is such a preference in a deed for the benefit of creditors, as is forbidden by the Insolvent Act of 1884, ch. 295. The language of that Act is very general and covers every species of debt, and we see no escape from holding that the reservation made in this deed is within the prohibition of that Act. The debtor who was in failing circumstances, employed the draughtsman. No one else could, for there was no trustee to do it until the deed was made. It was his debt or he could not charge his estate in the hands of a trustee, with its payment as he did do by the deed. He ought to have paid the draughtsman and left no debt outstanding for the service rendered, to be paid in full from his estate as a preference debt. The question turns entirely on the construction of the Act of Assembly, and, in determining what kind of debt is contemplated by and embraced in it, we find no occasion to cite authority in support of our view. If this deed had never been executed, there can be no question that the draughtsman would have had a proper claim against his employer, notwithstanding the deed had never been executed. Its execution could not change the character of the claim unless there had been a special contract to that effect. The fee for preparing this deed was beyond question a debt of the grantor, and though created in an attempt to provide for his creditors, we find no warrant for excepting it from the operation of the Act. A majority of the Court thinking the order of the insolvent Court of Baltimore City appealed from was properly passed, the same will be affirmed.

*Order affirmed.*

(Decided 22nd July, 1885.)

Judge BRYAN delivered the following dissenting opinion, in which Judge RITCHIE concurred:

The deed of trust in this case was made by an insolvent merchant. The trustee is directed in the first instance, "to pay and disburse all the lawful expenses, costs and charges of executing, and carrying into effect this trust, including a reasonable fee for the preparation of this deed, and for such legal advice and services as may be necessary for said trustee to procure and use in the trust and the management thereof;" and secondly, to "pay and satisfy the said debts due to the individual and firm creditors of the party of the first part, in manner and form as law and equity may determine their respective rights, *pari passu,* and without any preference or priority save what the law allows, and save that the wages of the clerks and employés of said party of the first part, shall be paid in full to the extent not forbidden by the insolvent laws of the State of Maryland." It was held by the Court of Common Pleas that the deed created an illegal preference in securing the fee of the attorney who drew it, and that, consequently, it was void under the thirteenth section of the Act of 1884, ch. 295.. The object of this section was to compel a ratable distribution of the property of insolvent merchants among their creditors, subject only to the trifling exceptions therein mentioned. Equality was the rule to be enforced in the settlement of these estates; and every deed which violated this rule was declared to be void. But deeds were not affected which made a fair and impartial distribution of the property among the creditors, without preference or priority. It is perfectly lawful for a merchant in insolvent circumstances to make this distribution by means of a deed of trust. The deed is a part of the legitimate and necessary machinery by which the distribution is made. If the trust is for the general benefit of the creditors, the expenses incurred in the preparation and recording of the deed are equally for their general

benefit.   After the execution of the deed, the costs of all the proceedings necessary for the distribution of the funds would, of necessity, be borne by the trust property.   Now the deed is the initial point from which all these proceedings are inaugurated.   Without it, they could not take place.   Charging the cost of the deed to the trust fund can never be injurious to the creditors; because, if the debtor should pay the expense himself previously to its execution, the sum so paid would diminish to that extent the assets which would otherwise have gone into the trust fund.   And if the expense were not paid in cash, or charged to the trust fund, in most cases it would be impracticable to provide for the preparation of the deed, as no one would draw it on the understanding that he was to be paid only a dividend on his fee out of an insolvent estate.   Persons in the situation of the grantor in this case are prohibited by the statute from giving a priority to a favored creditor. · But surely this prohibition does not include the case of a debt incurred for the benefit of the creditors, and as a necessary means of dedicating the property to their use.   This deed makes the very disposition of the property, which the statute requires.   Paying the expense of it out of the trust fund, is in effect payment by the creditors.   It is no hardship that they should pay for an instrument made for their benefit; and it is not forbidden by the spirit and policy of the statute that they should do so.

It has been said that the fee for drawing the deed was a debt due by the maker of the deed to the draughtsman. The deed does not so state.   It simply provides for the payment of it out of the trust funds.   It is perfectly consistent with this provision of the deed that the maker may have made an agreement with the draughtsman that he was to seek his compensation out of the trust property, and not hold the maker personally liable for it.   And considering his insolvent condition, this was most probably

the understanding.  In this event it would be a question for the Insolvent Court to decide whether the fee was a proper charge on the funds; and if it decided adversely to the draughtsman's claim, he would lose it, and the invalidity of the trust for its payment would leave the deed unimpaired in other respects.  We place our opinion, however, on the ground that the deed was for the general benefit of the creditors, and that the expense of it ought to be paid out of the fund which it appropriates to their use.