MEMPHIS GROCERY COMPANY ET AL. *v.* J. G. LEACH ET AL.

1. ASSIGNMENT FOR CREDITORS. *Attorney's fees. Future services. Code* 1892, *ch.* 8.
   Since chapter 8, code 1892, requires an assignee in a general assignment
   for creditors to file a petition in chancery for the administration of the
   trust, to give bond and file an inventory, and since in these matters nec-
   essary counsel fees are allowable, such an assignment is not invalid be-
   because it prefers a fee to attorneys "for services and advice in and
   about this assignment, and for the execution of this trust."

2. SAME. *Schedules. Sufficiency. Code* 1892, *§* 124. *Substantial compliance.*
   Under *§* 124, code 1892, providing that schedules of assets and liabilities
   shall be filed with every general assignment, or else it shall be void as
   to preferences, it is sufficient if there be substantial conformity to the
   statute, as where the assignment and schedules together indicate the as-
   sets and liabilities so as to give full information of both. It is not nec-
   essary to set forth the status of either further than the statute specific-
   ally requires.

3. DEED. *Construed as mortgage. Assignment. Priority.*
   Where a debtor executes a conveyance of land to his creditor, with a
   verbal agreement for a reconveyance upon payment of the debt, retaining
   meanwhile possession of the land, and the latter, after keeping the deed
   several days, returns it to the grantor to be acknowledged and put on
   record, but the grantor neglects to do this, and finally makes a general
   voluntary assignment for creditors, the chancery court administering
   the trust will treat the deed as a mortgage, valid as against the grantor
   or his assignee, and will order the proceeds of the land paid to such
   creditor.

FROM the chancery court of Marshall county.

HON. B. T. KIMBROUGH, Chancellor.

Section 117, code 1892, provides that the assignee or trustee in a general assignment for creditors, where the property exceeds in value $1,000, shall, within twenty-four hours after taking possession, file a petition in the chancery court for the administration of the trust, making the assignor and all his creditors parties. Sections 118 and 119 provide for the giving of a bond by the assignee and for his becoming a receiver of the court. Section 120 requires the assignee, "as speedily as may be, and within ten days after filing his petition, to prepare and file in the cause a complete and perfect inventory of the property and effects assigned." Section 121 provides that any creditor may file a cross-petition and show that the assignment is fraudulent or should not be enforced, and, by succeeding in this, obtain priority in the distribution of assets. Section 124 requires that, with every general assignment, there shall be filed, unless the data appears on its face, at least two schedules—one a schedule of liabilities—which must set forth, so far as known to the assignor: (a) The name of each of his creditors; (b) the post-office address of each; (c) the sum due each; (d) how each debt is evidenced; (e) the amount of interest each debt bears, and if, in any way, the debt is usurious, the fact must be stated; (f) the consideration for each debt, and, in case of renewals, the history of the transaction must be traced to the original consideration; and (g) what security, if any, each creditor has. The other schedule—a schedule of assets—"must describe the property conveyed, and give its location and value."

In December, 1892, J. W. Moore, a merchant, made a general voluntary assignment to J. G. Leach, assignee, for the benefit of creditors, preferring therein debts to Smith & Totten for $500 and to Lida Moore for $2,100. In the schedule of liabilities filed by the assignee, the debt to Smith & Totten is described as "an open account for legal services

and advice in and about this assignment and for the execution of this trust."

Among other debts listed in the schedule of liabilities, is one for $1,500 to Emmett Crook, evidenced by five notes for $300 each. As to this, Moore, the assignor, testified that Crook was his former partner, and the notes were given in purchase of his interest in the firm when it dissolved; that, to secure the notes, Moore executed a deed to certain lots in Red Banks, Miss., but never acknowledged the deed; that there was a verbal agreement that Crook should reconvey if the notes were paid; that the deed was delivered to Crook, but, after a few days, was returned by him to Moore, to be taken to Holly Springs, the county seat, to be acknowledged and 'put upon record; that Moore went to Holly Springs with the deed, but, finding the clerk busy, omitted to acknowledge it, and was in possession of the deed and also of the land at the time the assignment was executed.

The assignment itself contained a list of creditors and the amount due to each, and a list of these was also filed separately as a schedule. Among these is a debt listed as "Holly Springs Bank, Holly Springs, Miss., note and interest $1,000." The schedule of assets sets out and describes the several tracts of land assigned, with the valuation of each, and proceeds to give the personal property as follows: "The stock of goods, fixtures, etc., worth about $1,200; books, notes and accounts, and other evidences of debt, estimated at about $2,000 in value; mules and horses, eight head, worth $400; seed cotton, estimated about three bales, worth $110."

The day after the execution of the assignment, the assignee filed a petition in the chancery court for the administration of the trust, making the assignor and creditors parties defendant. Thereupon the Memphis Grocery Company and others, filed an answer and cross-bill alleging that the assignment was void, because made for the purpose of hindering, delaying and defrauding creditors; that the purpose of the assignor was to force a compromise from his creditors, and to

enable himself and family to repossess the estate; that the debt to Lida Moore, a sister of the assignor, was simulated; that the consideration of the debt to Smith & Totten was in part services to be rendered in defense of the assignment, in the event of an attack upon it by creditors, and for services to be rendered to the assignee in the execution of the trust. It is also contended that the schedules are insufficient under the statutes above mentioned, and that the preferences are for that reason void.

The Bank of Holly Springs, one of the creditors, and a defendant, filed a separate answer and cross-bill, alleging that part of the debt of $1,000 listed in the schedules as due to it was really due by the firm of Moore & Crook; that Moore, the assignor, had purchased the interest of his partner, Crook, in said firm for $1,500, giving his notes therefor; that $410 of the debt due to it by Moore was an indebtedness of the firm of Moore & Crook, and that Crook was equally liable for the same; that the preference of $1,500 to Crook was an attempt to divert partnership funds and place them in the hands of one of the partners, and rendered the assignment void. In any event, respondent claims the right to have paid to it so much of the $1,500, which the assignment directed to be paid to Crook, as will pay its debt due by the firm of Moore & Crook.

Crook also filed an answer and cross-bill, in which he set out the facts in reference to the indebtedness of $1,500 substantially as stated in the schedule, and prayed that the proceeds of the land conveyed to him by Moore, and which was intended by them as a security for the debt, be decreed to be paid to him.

The testimony as to the $500 debt to Smith & Totten was that both the assignor and said attorneys understood that it was to pay for drawing the assignment, preparing the schedules and inventories, looking to the qualification of the assignee and "to do whatever was necessary to get the assignee in court," and that these services were performed.

It is not necessary to further state the pleadings or the evidence. There was a decree in favor of the assignee, sustaining the validity of the assignment. The decree held that Crook should be treated as a mortgagee of the land conveyed to him, but, as he was liable jointly with Moore to the Bank of Holly Springs on the note for $410, this sum was decreed to be first paid to said bank out of the proceeds of the lands embraced in the conveyance to Crook. From this decree the Memphis Grocery Company and its co-respondents appeal.

*R. T. Fant* and *James T. Fant*, for appellants.

1. The provision for the payment of the attorney's fee for future services invalidates the assignment. *Shellabarger* v. *Mattin*, 27 Am. St. R., 306; *Mattison* v. *Judd*, 59 Miss., 99; *Selleck* v. *Pollock*, 69 *Ib.*, 870; *Richardson* v. *Stapleton*, 60 *Ib.*, 97; Bump. Fr. Con., 418. The assignment, being with preferences, is to be strictly construed. *Selleck* v. *Pollock, supra.*

2. The assignment is void as to preferences, because of the insufficiency of the schedules. As an instance, the debt to the Bank of Holly Springs is described as a debt of Moore, whereas part of it is the debt of Moore & Crook. An incomplete schedule is, in effect, no schedule. 2 Am. St. R., 17; *Ib.*, 29.

3. It was error to direct the proceeds of the lots in Red Bank, to be paid to Crook. If the deed had ever been delivered, it had been surrendered. Moore was still in possession, and, in his schedule, states that the deed had never been delivered.

*R. H. Taylor*, for appellee, Lida E. Moore.

1. No actual fraud is shown. The fee directed to be paid is reasonable. The services of counsel were to extend only to the preparation of the assignment, and matters essential to perfect it as a legal conveyance under the statute. There was no service thereafter to be performed for the assignor, and no reservation of any benefit to him.

2. The conveyance and the schedules are amply sufficient to meet the demands of the statute, and carry into effect the object and intentions with which the assignment is made. *Wickham* v. *Green*, 61 Miss., 463; 6 Mich., 329; Burrill on Assignments, § 151.

*J. H. Watson*, for appellees.

The provision as to the payment of counsel fees is not objectionable. The case of *Selleck* v. *Pollock*, and others relied on, are not in point, for, under the code 1892, the assignor is required to do more than merely draw and execute the assignment. He must prepare schedules, see to the qualification of the assignee, and the assignee must file a petition in chancery and prepare inventories. When the fee was stipulated for, it was known that all these services had to be performed, and it was a part of the attorneys' duty to attend to these matters. It was not only the assignor's right but his duty to contract for these services. In support of the provision, see *Armitage* v. *Rector*, 62 Miss., 600.

The schedules are amply sufficient. It cannot be expected that the assignor can file a schedule in more than general terms.

It was proper to decree payment of the proceeds of the Red Banks lots to Crook. He was, in equity, a mortgagee, and the assignee stands in the shoes of the mortgagor, with no higher rights. *Surget* v. *Boyd*, 57 Miss., 485; *Craft* v. *Bloom*, 59 *Ib.*, 69.

Argued orally by *R. T. Fant*, for appellants, and *J. H. Watson*, for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The assignment is assailed as void, because of a provision for the payment of $500 to Smith & Totten, attorneys, upon a stipulation that they should draw the deed of assignment and the necessary schedules to accompany it, " and for the execution of this trust," which is shown to have embraced

the qualification of the assignee as required by law, and preparing his petition and inventory of assets.

This provision does not come within the condemnation of any of our cases. In view of the statute requiring the assignee, immediately after taking possession of property assigned, to file a petition in chancery, accompanied by a bond, and speedily thereafter to file an inventory, for which he is entitled to allowance by the court for reasonable expenditures for the services of counsel in the performance of the duties required, to be paid out of the estate in his hands as receiver, it may be justly considered that the law devotes that much of the property assigned for this purpose; and it is not ground of just complaint by creditors that express provision is made for this known service by the assignment.

The schedules, in connection with the assignment, and part of it, are sufficient to save the preferences contained in the assignment from condemnation. They seem to be full and complete, so as to accomplish the purpose of the statute requiring them, and evince an honest effort to give full and precise information as to assets and liabilities, so as to disarm the criticism "that fraud lurks in generalities."

Upon the testimony as to the transaction between Crook and Moore about the lots in Red Banks, the court rightly directed the proceeds of sale to be paid to Crook, who was mortgagee, and, as such, entitled to claim against Moore or his assignee for creditors.

We concur in the view of the importance of sufficient schedules, as required, to save preferences, but substantial conformity to the statute will suffice. If the conveyances and schedules, taken together, sufficiently indicate the assets and liabilities to give full information of both, the object of the law is met. The omission to state every thing connected with a liability, *not specifically required by statute*, as in case of the debt to the Bank of Holly Springs mentioned, or the failure to mention some circumstance about land, other than describing it, so as to convey it, and give its location and

value, and give reasonable information concerning it, will not avoid preferences.

*Affirmed.*