### HAYNES v. HOFFMAN.

1. MORTGAGE—HOMESTEAD—ASSIGNMENT.—A mortgage of a homestead worth less than $1,000, executed to secure the purchase money of the same, according to a written agreement made four or five years previous, without any knowledge on the part of mortgagee that mortgagor was insolvent at the time of the execution, and a deed of assignment executed within ninety days thereafter, are not, under these facts, parts of a scheme to evade the assignment law (Rev. Stat., sec. 2147), and to give the mortgagee a preference over other creditors of mortgagor.

2. MORTGAGE—ASSIGNMENT.—In order to make a mortgage, executed within ninety days before an assignment, void, under Rev. Stat., sec. 2147, it must appear: 1. That mortgagor was insolvent at time of execution; 2. That the mortgage was made with a view to give mortgagee a preference; 3. That the mortgagee had reasonable cause to believe mortgagor insolvent at time of execution; 4. That mortgagee had reasonable cause to believe that the mortgage was made in fraud of the assignment law; 5. That the mortgage was executed within ninety days previous to date of assignment— following Akers v. Rowan, 33 S. C., 464.

3. ASSIGNMENT.—A deed of assignment reserving to the debtor "such real and personal property as is exempt from sale under the homestead laws of this State," is not void on account of such reservation.

4. IBID.—ATTORNEY'S FEE.—A provision in a deed of assignment for the payment of a certain sum to the attorney for drawing the deed is not an illegal preference.

Before GARY, J., Barnwell, May 30, 1895. Modified.

Action by B. F. Haynes against Joseph B. Hoffman, John S. C. Hoffman, and M. E. Izlar, as assignee of Joseph B.

Hoffman, to set aside a deed of assignment and a mortgage as a fraud against creditors, for the appointment of a receiver, for injunction, and for judgment on a note, commenced February, 1895. Judgment for plaintiff. Defendants appeal.

*Messrs. Laurie T. Izlar* and *Glaze & Herbert*, for appellant.

*Messrs. Bellinger, Townsend & O'Bannon*, contra.

March 12, 1896. The opinion of the court was delivered by

Mr. Chief Justice McIver. Inasmuch as it is stated in the "Case," as prepared for argument here, that the hearing below "was upon the pleadings and affidavits, plaintiff admitting the truth of the allegations of the answers of John S. C. Hoffman and Joseph B. Hoffman, and the statements made in the affidavits of Joseph B. Hoffman and M. E. Izlar," it will be necessary, for a proper understanding of the case, to set forth, substantially, the allegations and statements appearing in those papers, as found in the "Case." The first, second, third, and fourth allegations of the complaint relate only to the indebtedness of the defendant, Joseph B. Hoffman, to the plaintiff, amounting to eighty-seven 98–100 dollars, with interest from the 19th of December, 1894, as to which there is no dispute. In the fifth paragraph of the complaint, it is alleged that the defendant, Joseph B. Hoffman, was insolvent at the time of the transactions subsequently referred to. In the sixth and the seventh paragraphs the allegations are that the defendant, John S. C. Hoffman, who is a brother of the defendant, Joseph B. Hoffman, was a creditor of said Joseph B., and that on the —— day of ——, 1894, the said Joseph B. executed a mortgage, on a certain lot of land in the town of Blackville, to the said John S. C., to secure the payment of his bond, conditioned for the payment of $700. Though the date of this mortgage is left blank, it is alleged that the attendant circumstances, to wit: the date of the probate, and the renunciation of dower, show that it was executed on the

29th of December, 1894, and it was recorded on the 31st of December, 1894. It is further alleged in that paragraph, that at the time of the execution of the said mortgage, "the said John S. C. Hoffman had reasonable cause to know and believe that said Joseph B. Hoffman was insolvent, and plaintiff is informed and believes said mortgage was without any consideration, save and except a past due debt from said Joseph B. Hoffman to John S. C. Hoffman, and intended to hinder, delay, and defraud the other creditors of said Joseph B. Hoffman, and give a preference over them to said John S. C. Hoffman." In the eighth paragraph the allegation is that within ninety days after the execution of said mortgage, to wit: on the 11th day of February, 1895, the said Joseph B. Hoffman executed a deed of assignment to the defendant, M. E. Izlar, whereby he conveyed and transferred to the said Izlar all of his real and personal property, more fully designated in a schedule annexed to said deed, "save and excepting such real and personal property as is exempt from sale under the homestead laws of this State," in trust for the following purposes: 1st. To pay to his attorney "a fee of $100 for preparing the papers and deed of assignment." 2d. To pay such creditors as would accept the terms of the assignment within ninety days and release the assignor. 3d. To pay non-accepting creditors, &c. And it is further alleged that the said M. E. Izlar accepted the trusts, and that the deed of assignment was duly recorded on the 12th of February, 1895. In the ninth paragraph the allegation is that the said M. E. Izlar has taken possession of the assigned property for the purpose of executing the trusts of said deed. The tenth paragraph of the complaint reads as follows: "That the making and execution of said deeds of mortgage and assignment by the said Joseph B. Hoffman was a part of a scheme to evade the provisions of the Revised Statutes of South Carolina, relating to assignments, and to give preference under said mortgage to said John S. C. Hoffman over the other creditors of said Joseph B. Hoffman, and under said deed of

assignment to reserve to himself all of his property exempt from levy and sale under the homestead laws of this State, and to give a preference to his attorney, L. T. Izlar, over all his other creditors." Wherefore judgment is demanded as follows: 1st. That said mortgage be declared to be fraudulent and void. 2d. That said mortgage and deed of assignment, considered collectively or separately, be adjudged fraudulent and void as against this plaintiff and such other creditors of said Joseph B. Hoffman as shall come in and share the expenses of this action. 3d. That a receiver be appointed of all the property and effects of the said Joseph B. Hoffman, and that the defendants account for all the property covered by said mortgage and deed of assignment, and deliver the same to such receiver. 4th. That said M. E. Izlar be enjoined from taking any further proceedings under said deed of assignment. 5th. That the creditors of said Joseph B. Hoffman be enjoined from prosecuting any action against Joseph B. except in this case. 6th. That the receiver do, out of the assets, pay the claims of the creditors of said Joseph B. Hoffman, according to their respective rights, and hold the balance, if any, subject to the further order of this court. 7th. That the plaintiff have judgment against the defendant, Joseph B. Hoffman, for the said sum of $87.98, with interest as set forth above.

To this complaint defendant, Joseph B. Hoffman, answered as follows: *First.* Admits the allegations contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, and 9 of said complaint. *Second.* "Denies the allegations contained in the tenth paragraph of said complaint; and alleges that the said mortgage was given to John S. C. Hoffman for moneys borrowed from him four or five years ago, to aid said defendant in paying for the premises so mortgaged, and in pursuance of an agreement then made with him in writing, pledging the said place as security for the said money so borrowed; and, further, that the place so mortgaged is this defendant's homestead, and the plaintiff nor any other creditor has any right or interest therein, as the same is worth less than one thousand dollars."

In the answer of John S. C. Hoffman he says: "I. That he has no knowledge or information sufficient to form a belief as to the allegations contained in paragraphs 1, 2, 3, 4, 5, 8, and 9 of the said complaint, and can, therefore, neither admit nor deny the same. II. Admits the allegations contained in paragraph 6 of the complaint. III. Admits so much of paragraph 7 of the complaint as alleges the execution and delivery of the bond and mortgage by the defendant, Joseph B. Hoffman, to this defendant, the probate of said mortgage deed, the renunciation of dower by Mrs. Hattie Hoffman, the wife of said Joseph B. Hoffman; and, upon information and belief, admits the recording of said mortgage; but specifically denies that he knew, or had reasonable cause to know, that the said Joseph B. Hoffman was insolvent at the time, and that the bond and mortgage were without consideration, and that the same were executed to hinder, delay or defraud the other creditors of the said Joseph B. Hoffman, or intended for that purpose; but, on the contrary, this defendant alleges that the said bond and mortgage were executed and delivered to this defendant *bona fide*, for valuable consideration; the said mortgage being given upon the homestead of the said Joseph B. Hoffman, which was in no way liable or subject to the debts, claims or demands of his creditors, or any of them, other than this defendant, all of which was well know to said creditors at that time, as this defendant is informed and believes. IV. Denies each and every allegation in paragraph 10 of the said complaint, in so far as they relate to this defendant, and to the said bond and mortgage held by this defendant against the said Joseph B. Hoffman." Further answering, this defendant alleges: "That on or about the 31st day of March, 1890, this defendant loaned to the said Joseph B. Hoffman, in cash, the sum of $612, for the purpose of enabling the said Joseph B. Hoffman to purchase the said lot of land and real estate, and thus secure a home, and enable him to carry on business in the town of Blackville, South Carolina. That at the time it was agreed that

11—46

the said Joseph B. Hoffman would repay to this defendant the said sum, with interest, in three equal annual installments, with interest from said date; that to secure said loan and sum, and to avoid the expense of drawing and recording papers, it was further agreed that this defendant should hold the title deed to said real estate as security, until the said amount and interest should be repaid; and, thereupon, the said Joseph B. Hoffman delivered to this defendant the said title deed, and this defendant gave to the said Joseph B. Hoffman his receipt, stating said agreement. That this defendant has had said deed in his possession as security ever since, and believed that the holding of the same afforded him security for said loan. That upon a failure of the said Joseph B. Hoffman to pay the said sum and debt as agreed, this defendant was advised to require a bond and mortgage of the said premises, and he thereupon instructed his attorneys to prepare the said bond and mortgage and to have the same executed, which was accordingly done; and this defendant now holds the said bond and mortgage to secure the balance of said debt and interest, to wit: the sum of $700, no part of said sum ever having been paid; and that the said sum and interest is justly due to this defendant." In this affidavit of Joseph B. Hoffman above referred to, the statements of which are admitted by the plaintiff to be true, as hereinbefore stated, we find the following: "That he admits executing the mortgage and deed of assignment as set forth in the complaint, but denies that either one of them, or both together, were executed with any view of evading the assignment laws of this State, or of hindering, delaying or defrauding his creditors, but, on the contrary, declares, under oath, that the said papers were executed under the following state of facts: that he owed his brother, J. S. C. Hoffman, who resides in Orangeburg, for money borrowed from him to enable deponent to pay for the mortgaged premises, when deponent bought the house and lot, and for which his brother held a memorandum in writing, pledging him the security of a mortgage whenever de-

manded. The mortgage was demanded last fall (the affidavit bears date 8th of March, 1895), when the financial stress became so great, and when demanded it was executed as per the previous memorandum, given four or five years ago." After speaking of the particular circumstances attending the execution of the mortgage, which do not seem to be material, the affiant proceeds as follows: "That at that time deponent had not the remotest idea of making any assignment, but believed himself able to carry on his business, and pay all his creditors every dollar; that he did go (on?) with his business as usual, and paid creditors after that every dollar that he could get in; that he did not mortgage or encumber in any way any of his property which was in any way liable to his creditors, but in securing his brother, he mortgaged his little home, where he and his family reside, and which is not worth more than $700, and is all of the real property he owns." Further, in his affidavit deponent says: "That deponent did not realize his real financial condition until about a week before the deed of assignment was executed, and did not make up his mind to assign until a day or two before the deed of assignment was made."

The Circuit Judge rendered his decree, in which, without going into any discussion of the facts or giving any reason for his conclusions, he simply says: "After a careful consideration of the pleadings, I am satisfied that the deed of assignment and mortgage are not in compliance with the requirements of law," and he, therefore, rendered judgment, setting aside the mortgage and deed of assignment as void as against the plaintiff and such other creditors of Joseph B. Hoffman as shall come in and share the expenses of this action; for the appointment of a receiver of all the property, both real and personal, of the said Joseph B. Hoffman; that defendants do deliver to such receiver all of said property, and that the defendant, M. E. Izlar, do account to the receiver for all property which has come into his hands under the deed of assignment; that the plaintiff have judg-

ment against the defendant, Joseph B. Hoffman, for the sum of $87.98, with interest from the 19th of December, 1894; that the creditors of Joseph B. Hoffman be enjoined from prosecuting any action against him other than in the case, and that such creditors be required to come in and prove their demands before the master for Barnwell County; and that, in the meantime, and until the receiver shall qualify, the defendant be enjoined from disposing of any of the property directed to be turned over to the receiver.

From this judgment, the defendant gave due notice of appeal, upon the several grounds set out in the record, which need not be stated here, as we propose, instead of considering these grounds *seriatim*, to state and consider the several questions which they raise.

In the outset, we would remark, that the Circuit Judge must have overlooked the agreement, distinctly stated in the "Case," that the hearing below was not only upon the pleadings, *but also upon the affidavits;* for, in the outset of his decree, he says, the cause "was submitted to the court upon the pleadings herein, and a motion by the plaintiff for judgment on the pleadings." And again he says, that after a careful consideration *of the pleadings*, he reached the conclusions above set forth. Not a word said about the affidavits. Nor is there anything to indicate that the Circuit Judge had in his mind, in preparing his decree, the distinct statement made in the "Case," *that the plaintiff admitted the truth of the allegations of the answers of John S. C. Hoffman and Joseph B. Hoffman, and the statement made in the affidavits of Joseph B. Hoffman.* On the contrary, everything shows that the Circuit Judge must have overlooked these distinct admissions. There having been no testimony adduced in the case, outside of that derived from the pleadings and affidavits, we must look for the facts upon which this controversy turns alone to such allegations of the complaint as are admitted by the answers (for there is no statement that *all of the allegations of the complaint* are admitted to be true), and

to the allegations made in the answers and the statements made in the affidavit of Joseph B. Hoffman, which *are* admitted to be true. Looking, then, to these sources for the facts, it is quite clear that there is not only no evidence tending to show that the execution of the mortgage and the deed of assignment was a part of a scheme devised by Joseph B. Hoffman to evade the provisions of the assignment law, and to give a preference to John S. C. Hoffman over the other creditors of Joseph B. Hoffman; but the evidence does show directly the contrary. The allegations in the tenth paragraph of the complaint to that effect is distinctly denied in the answers, and, therefore, cannot be accepted as true; while the allegations in the answers and in the affidavit, which, under the admission, must be accepted as true, distinctly and emphatically negative any such idea. Without going over in detail the several allegations in the answers and in the affidavit above set forth, the undisputed and admitted facts are, that there was no connection whatever, either in point of time or purpose, between the execution of the mortgage and the deed of assignment. The mortgage was executed on the 29th of December, 1894, in pursuance of an agreement in writing to that effect, entered into about four years before that date, to secure the payment of a *bona fide* debt, then contracted for the loan of money to pay the purchase money of the mortgage premises, which were not included in the deed of assignment, and could not have been reached, through any legal process, by any creditor of Joseph B. Hoffman, because such premises are admitted to be the homestead of said Joseph B. Hoffman, and worth less than $1,000; moreover, it is distinctly stated in the affidavit of Joseph B. Hoffman (which statement under the admission must be accepted as true) that at the time he executed the mortgage he "had not the remotest idea of making any assignment, but believed himself able to carry on his business, and pay all of his creditors every dollar. That he did go (on?) with his business as usual and paid creditors after that every dollar

that he could get in." And he further says: "That deponent did not realize his real financial condition until about a week before the deed of assignment was executed, and did not make up his mind to assign until a day or two before the deed of assignment was made," which was on the 11th of February, 1895, more than a month after the mortgage was executed. It is clear, therefore, that there is no evidence whatever to sustain the allegation that the mortgage and deed of assignment were parts of a scheme to evade the assignment law and secure a preference in favor of John S. C. Hoffman.

The next inquiry is, whether the mortgage was void because it was executed within ninety days prior to the execution of the deed of assignment, under the provisions of section 2147 of the Revised Statutes of 1893. To make the mortgage void under that section the following facts must be made to appear: 1st. That Joseph B. Hoffman was insolvent at the time the mortgage was executed. 2d. That the mortgage was made with a view to give a preference to John S. C. Hoffman. 3d. That the said John S. C. Hoffman had reasonable cause to believe that Joseph B. Hoffman was insolvent at the time. 4th. That John S. C. Hoffman had reasonable cause to believe that the mortgage was made in fraud of the assignment law. 5th. That the mortgage was executed within ninety days previous to the execution of the deed of assignment. *Akers* v. *Rowan*, 33 S. C., at page 464–5. Now, while it may be conceded that the first and fifth of these facts have been made to appear, although it seems that Joseph B. Hoffman did not know that he was insolvent at that time, yet the second, third, and fourth facts have not only not been made to appear, but are expressly negatived by the evidence in the case, especially the very material fact that John S. C. Hoffman, at the time he took the mortgage, either knew or had reasonable cause to believe, that Joseph B. Hoffman was insolvent, for he says in his answer that he neither knew, nor had reasonable cause to believe

that Joseph B. Hoffman was insolvent at the time, and this allegation is admitted to be true. It appears that John S. C. Hoffman resided in a different town and county from that in which Joseph B. Hoffman lived and did business, and there is no fact or circumstance even tending to show that he was familiar with the business of Joseph B. Hoffman. It is clear, therefore, that the allegation that the mortgage was void under section 2147, cannot be sustained for want of material facts to support it. In addition to this, it being admitted that the property covered by the mortgage was the homestead of Joseph B. Hoffman, and as such beyond the reach of his creditors, by any process or proceeding known to the law, it is difficult to conceive how such mortgage could be regarded as a fraud upon the creditors, under the principles laid down in *Bridges* v. *Howell*, 27 S. C., at page 434–5, and the cases there cited, as well as in the case of *Wood* v. *Timmerman*, 29 S. C., 175.

The next inquiry is, whether the reservation in the deed of assignment of "such real and personal property as is exempt from sale under the homestead laws of this State," renders the assignment void? In *Adler* v. *Cloud*, 42 S. C., 272, the doctrine was distinctly recognized that such a reservation would not affect the validity of the assignment; and appellants' counsel have cited several cases from North Carolina, which we have examined, all of which clearly show that such a reservation does not render the assignment void. See *Eigenbrau* v. *Smith*, 4 S. E. Rep., 122; *Bobbitt* v. *Rodwell*, 11 S. E. Rep., 245; *Morehead Banking Co.* v. *Whitaker*, 14 S. E. Rep., 920, where Merriman, C. J., in delivering the opinion of the court, speaking of the assignor, uses this language, which seems very appropriate to the case under consideration: "He did not reserve to himself any advantage or provide for any delay or hindrance to his creditors, except that he reserved his rights of property exemptions as allowed by the Constitution and laws. Such reservation does not imply fraud or fraudulent purpose; it withholds nothing from his creditors

that they are entitled to have, nothing that they could sell under execution if the deed had not been made. The deed in no way helped the debtor to claim and have his exemption—these the law secured to him in any case; they afforded no motive, fraudulent or otherwise, to make the deed." The same doctrine was held in *Davis* v. *Smith*, 18 S. E. Rep., 53, and in *Rouse* v. *Bowers*, 16 S. E. Rep., 684. The same doctrine has been held in Mississippi—*Richardson* v. *Marqueze*, 42 Am. Rep., 353. We do not think that the reservation of the property, exempted from levy and sale under the Constitution and laws of the State, vitiated the assignment. Such property, being beyond the reach of creditors, cannot be regarded as any part of the property of the debtor, in which creditors have any interest or concern, and the debtor may dispose of it in any way he sees proper, without regard to the interest of his creditors. Such is the true intent and spirit of the homestead laws. Accordingly, it has been held that a debtor may make a valid conveyance of his homestead, even after judgment recovered against him. *Cantrell* v. *Fowler*, 24 S. C., 424; *Ketchin* v. *McCarley*, 26 S. C., 1, and many other cases in which the same doctrine is recognized. The same doctrine is laid down in Bur. on Ass., sec. 202.

Our next inquiry is, whether the provision in the deed of assignment for the payment of the fee of the attorney for drawing the deed of assignment, was such an unlawful preference as would vitiate the assignment? That question is concluded by authority. See *Brice* v. *Foot*, 25 S. C., 467; *Verner* v. *Davis*, 26 S. C., 609—more fully reported in 2 S. E. Rep., 114; which distinctly hold that such a provision is not an illegal preference, and the same doctrine is recognized in the recent case of *Clarke* v. *Baker*, 36 S. C., at page 423.

From the foregoing views, it follows that so much of the circuit decree as provides for the appointment of a receiver, and requires the defendants to turn over to such receiver the property and assets of Joseph B. Hoffman, is erroneous,

and must be set aside—indeed, the whole decree, except so much thereof as renders judgment against the defendant, Joseph B. Hoffman, in favor of the plaintiff for the amount of his debt—$87.98 and interest—should be set aside.

The judgment of this court is, that the judgment of the Circuit Court be reversed, except in so far as it renders judgment in favor of the plaintiff against the defendant, Joseph B. Hoffman, for the sum of $87.98, with interest thereon from the 19th day of Decemder, 1894, in which respect said judgment is affirmed.