**Harold J. ABRAMS, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 16228.

United States Court of Appeals
Eighth Circuit.

Jan. 15, 1960.

---

Harold I. Elbert, St. Louis, Mo., for appellant.

Louise Foster, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before GARDNER, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

The United States, plaintiff-appellee, brought an action against Harold J. Abrams, defendant-appellant, to recover $650.00 paid by Abrams to one Bernard Barken for legal services prior to and in connection with a general assignment for the benefit of creditors executed by Harber Products, Inc. The District Court held that payment of the fee violated the statutory priority given to debts owed the United States by § 3466, Revised Statutes (31 U.S.C.A. § 191),[1] which priority arose here because of Harber Products' indebtedness to the government for federal taxes, and that therefore under § 3467, Revised Statutes (31 U.S.C.A. § 192)[2] the United States was entitled to recover from Abrams the amount paid by him in violation of its priority. The lower court also ruled that the provision in the deed of assignment providing for payment of the fee constituted a void preference under § 426.-010 of 22 Vernon's Annotated Missouri Statutes (1949).[3] Judgment was accordingly entered for the United States, from which result Abrams has appealed.

An understanding of the questions presented requires a review of the facts in some detail. Harber Products, Inc., manufactured plastic rainwear. In 1954 a severe drought greatly reduced its sales and placed the company in jeopardous financial condition. Among its then outstanding obligations was a debt to the United States of $12,054.66 for unpaid Withholding Taxes covering the years 1952 and 1953 and for Unemployment Taxes due during 1952, 1953 and 1954. In September of 1954 Bernard Barken, an attorney, was paid a retainer of $50.00 or $100.00 by the company to review its financial condition. Barken thereupon conferred with Harber Products' auditor and familiarized himself with the company's problems. He also consulted, without avail, several department stores in regard to the sale of Harber Products' rainwear. In November,

1. "§ 191. *Priority established*

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of his executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

2. "§ 192. *Liability of fiduciaries*

"Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

3. "§ 426.010. *Voluntary assignment—execution of*

"Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; and every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid pro rata from the assets thereof; and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed."

o

Barken concluded that there was no hope for the company's continued existence. He then contacted Abrams, an attorney who specialized in insolvency proceedings and who had acted as trustee under more than one hundred assignments for the benefit of creditors. It was agreed by them that Abrams would act as trustee under such an assignment by Harber Products.

Prior to the execution of the deed of trust Barken conferred with Abrams three times, during which conferences he supplied him with information on Harber Products' assets and liabilities and lists of its creditors and accounts receivable. Barken also prepared the necessary shareholder resolutions and director minutes authorizing the assignment. Abrams testified before the court below that, "without the figures I could not have accepted the assignment", and that he "required" the minutes prior to the assignment. During the conferences Barken also helped Abrams familiarize himself with the general nature of Harber Products' business and assets. Barken additionally informed Abrams that a Mrs. Bertha Sloofman, mother of the two principal officers of Harber Products, held a bill of sale covering a major portion of the company's machinery and equipment. Abrams thereupon informed Barken that he "could not accept the assignment as trustee with this bill of sale authority because it would only lead to litigation considering it embraced the majority of the equipment of the company and the relationship between the officers and Mrs. Sloofman being sons and mother," and that "he did not want to take an assignment that would be comprised mostly of litigation." Barken alone then conferred with Mrs. Sloofman and her two sons and prevailed upon her to execute a waiver of any interest in the property she might have under the bill of sale.

Barken and Abrams collaborated in drafting the assignment deed. It was typed in Abrams' office and executed on December 2, 1954. The deed provided, *inter alia*, that:

"The Trustee shall be authorized to employ counsel if necessary, and to pay such counsel a reasonable fee, and to pay a reasonable fee to counsel for the Assignor."

Following the assignment Barken made arrangements with the two principal officers of Harber Products to turn over to Abrams two automobiles owned by the corporation which were in their possession. In addition, Abrams asked Barken to represent him in a replevin action brought by the Singer Sewing Machine Company against Harber Products. Barken filed an answer and subsequently joined in a stipulation permitting Singer Sewing Machine Company to have a judgment for recovery. Barken also appeared for Abrams in a suit brought by the Victory Products Company against Harber Products for a money judgment, which also resulted in Barken's consent to an adverse decree. Abrams further testified that at his request Barken attended the trustee's sale on December 15, 1954, "in the event any question arose as to whether any of the fixtures might be attached to the 'freehold' and claimed by the landlord * * *". Finally, Barken supplied Abrams with certain information necessary for the preparation of Harber Products' final tax returns.

Pursuant to the provisions of the assignment, Abrams paid Barken on May 13, 1955, the sum of $650.00, which Abrams testified he felt to be a reasonable fee. Abrams further stated that:

"In fixing the fee I did not take into consideration any services which he (Barken) may have rendered his client (Harber Products) before the assignment was executed and which did not refer to the assignment, but I considered his work in preparing the directors' and stockholders' minutes authorizing the assignment, the time he devoted in meeting with me and discussing the financial affairs of the company. I considered those things occurring immediately prior to December 2, 1954.

"I considered his negotiations with Mrs. Sloofman very highly because I knew of the existence of the bill of sale which Mrs. Sloofman had * * * and I would not take the assignment if that bill of sale remained in existence * * *.

"I bore in mind the surrender of the two automobiles in fixing the fee * * *. In fixing his fee I considered Mr. Barken had spent maybe an hour or two at the trustee's sale, it was not an important item. However, he was there at my request. I also considered the two lawsuits * * *. I also considered that he spent some time in furnishing me with statistical information concerning the debtor which was helpful in filing federal and state tax returns. * * * In addition I considered the general time spent by Mr. Barken in the several conferences we had on the subject."

Abrams finally asserted that he "knew he (Barken) had not received any legal fees for the matters I paid him for" from Harber Products.

Abrams realized $13,189.47 through the liquidation of Harber Products, of which $4,515.00 was attributable to the property previously held by Mrs. Sloofman under the waived bill of sale. After deducting expenses, $8,901.28 remained to be applied to the debt owed the United States, leaving a balance owing of over three thousand dollars.

The District Court held that the services rendered by Barken prior to the date of the assignment were for the sole benefit of the assignor, Harber Products; that as to such services Barken was, therefore, a general creditor of the assignor; and that consequently under § 3466 his fee was subject to the priority of the United States. Those services rendered by Barken after the assignment were deemed by the lower court to have been of no value, entitling him to no payment therefor. The court thus concluded that Abrams was obligated to the United States under § 3467 in the amount of $650.00 paid Barken prior to the discharge of the indebtedness to the government. As an alternative ground for its judgment, the District Court found that the provision of the deed of trust authorizing payment of the assignor's attorney constituted a void preference under Missouri law.

 Considering first whether or not the payment to Barken violated the government's priority, we are compelled to disagree with the lower court's construction of § 3466. The parties state that, and insofar as we can ascertain, the question is one of first impression. Despite the fact that the priority statute has been in effect since 1797,[4] no court has as yet been called upon to determine whether or not payment of a fee to the attorney of an assignor under a general assignment for the benefit of creditors violates its provisions. However, the courts did early establish the general rule that expenses of administering the assignment take precedence over the government's priority under § 3466. United States v. Hunter, C.C.R.I., 1828, 26 Fed. Cas. page 439, No. 15,427, affirmed 30 U.S. 173, 8 L.Ed. 86; United States v. Eggleston, C.C.Or., 1877, 25 Fed.Cas. page 979, No. 15,027; Kennebec Box Co. v. O. S. Richards Corp., 2 Cir., 1925, 5 F.2d 951; Lerman v. Lincoln Novelty Co., 1941, 130 N.J.Eq. 144, 21 A.2d 827. The underlying issue to be determined, then, is whether or not the payment made here can be deemed an expense of administration.

In support of the proposition that such classification is proper, appellant relies upon a number of cases decided under the Bankruptcy Act of 1867 holding that a fee to the attorney for the bankrupt for his services in furtherance of the proceedings could be preferred despite the fact that the Act contained no affirmative provision so allowing. See, In re Brundin, D.C.Minn., 1901, 112 F. 306; In re Mayer, D.C.E.D.Wis., 1900, 101 F. 695, No. 370; In re Andrews, D.C.W.D.

4. Act March 3, 1797, ch. 20, § 5, 1 Stat. 515.

Pa., 1897, 1 Fed.Cas. page 867; In re Kennedy, D.C.W.D.Pa., 1873, 14 Fed.Cas. page 309, No. 7,700; In re Hirschberg, D.C.S.D.N.Y., 1868, 12 Fed.Cas. page 212, No. 6,530; contra, In re Gies, D.C.E.D. Mich., 1875, 10 Fed.Cas. page 339, No. 5,407; In re Jaycox, D.C.N.D.N.Y., 1873, 13 Fed.Cas. page 398, No. 7,239; In re Evans, D.C.W.D.Tex., 1869, 8 Fed.Cas. page 835, No. 4,552. The rationale of those holdings was said to be " * * * the equitable principle that he who shares in a benefit should contribute a like share to the expenses incurred in realizing the benefit." In re Kennedy, supra, 14 Fed. Cas. 309 at page 310, No. 7,700. Accordingly, courts have denied preferential treatment under the Act to a fee of the bankrupt's attorney for his services in connection with opposing the claims of the creditors. In re New York Mail Steamship Co., D.C.S.D.N.Y., 1869, 18 Fed.Cas. page 157, No. 10,211; In re Brundin, supra (dictum).

Admittedly, the above noted decisions construed an act differing greatly in language and purpose from § 3466. However, they are nonetheless persuasive in setting forth what we believe to be a sound general rule. That is, that creditors must bear the expenses of proceedings taken in their favor and that such expenses may include services of the attorney for the debtor if performed in furtherance of the insolvency remedy. There would be little doubt that the government's claim could not take precedence over a fee due an attorney retained by the trustee. See, e. g., Kennebec Box Co. v. O. S. Richards Corp., supra; United States v. Hunter, supra. We think the same rule must apply in this case to the payment of counsel retained by the assignor for the test is not by whom the attorney has been employed, but for whose benefit he has acted. Here, Barken performed substantial services in support of the proceedings. Prior to the assignment he drew up the necessary minutes and resolutions; he prepared inventories of the company's assets and lists of its accounts payable and receivable; he aided the trustee Abrams in becoming familiar with the debtor's business and its financial condition; he shared in the preparation of the deed of assignment; and finally, he succeeded in having waived a bill of sale covering a major portion of the corporation's equipment and machinery without which accomplishment Abrams admittedly would have refused to act as trustee. Further, there is no claim made that the amount paid Barken for those services was unreasonable, provided that any payment at all was proper under § 3466. Additionally, we do not believe that there is substantial evidence in the record contradicting Abrams' assertion that Barken's aid after the assignment was of considerable value. In conclusion, then, we believe that no construction of § 3466 is tenable which would allow the government's claim to take precedence over the amount paid here to the assignor's attorney in connection with the proceedings and entirely for the benefit of creditors.

 Turning next to the second ground of the decision below—that is, that the provision in the deed of assignment authorizing payment of a fee to the assignor's attorney constituted a void preference under Missouri statutory law —we must again disagree with the District Court. There are no Missouri decisions applying the anti-preference statute to circumstances similar to those in the instant case. However, the courts of Mississippi, Arkansas, South Carolina and Georgia have construed analogous acts to premit payment of a reasonable fee to the assignor's attorney for services rendered in furtherance of the assignment.

In Selleck v. Pollock, 1892, 69 Miss. 870, 13 So. 248, the Supreme Court of Mississippi held valid an assignment for the benefit of creditors which provided for payment to the assignor's counsel for advice given him in regard to the assignment and for preparation of the deed. Similarly, in Memphis Grocery Co. v. Leach, 1894, 71 Miss. 959, 15 So. 113, an assignment was upheld which gave a preference to the assignor's attorney

"for legal services and advice in and about this assignment, and for the execution of this trust". Lastly, in Hill v. Agnew Scales & Co., D.C.N.D.Miss., 1881, 12 F. 230, 232–233, the court stated, in respect to an assignment governed by Mississippi law:

"It is no objection to the conveyance that provision was made for the payment of a reasonable attorney's fee, for the examination of the facts, advice, and drawing up the assignment, * * *."

The courts of Arkansas reached like conclusions in two early decisions. In Lowenstein v. Finney, 1891, 54 Ark. 124, 15 S.W. 153, the court, relying upon Hill v. Agnew, supra, ruled that a general assignment for the benefit of creditors could provide for a fee to the attorney for the assignor. Subsequently, in Bank of Little Rock v. Frank, 1896, 63 Ark. 16, 37 S.W. 400, 401, the court struck down an assignment providing for payment of the assignor's counsel "for services to be rendered * * * in upholding, maintaining, and enforcing the assignment, and for 'legal advice' previously given," on the ground that the assignor could not direct the trustee to employ in the future any specific attorney, thereby giving rise to the inference that merely directing payment for " 'legal advice' previously given" would have been proper.

The law of South Carolina is to the same effect, Haynes v. Hoffman, 1896, 46 S.C. 157, 24 S.E. 103; Verner v. Davis, 1887, 26 S.C. 609, 2 S.E. 114 (both involving payment to the assignor's attorney for drawing the deed of assignment), as is the rule in Georgia. Drucker v. Wellhouse, 1888, 82 Ga. 129, 8 S.E. 40 (fee of assignor's attorney for drawing deed "and counsel in reference thereto").

The appellee calls our attention to two decisions holding to the contrary. In Wolsheimer v. Revinus, 1885, 64 Md. 230, 1 A. 128, the court found a provision in a deed of assignment stipulating payment to the assignor's attorney for drawing the assignment to be a void preference. In that case, however, two judges dissented in what we consider to be a better reasoned opinion, in which they explained that:

"If the trust is for the general benefit of the creditors, the expenses incurred in the preparation and recording of the deed are equally for their general benefit * * *. Now, the deed is the initial point from which all these proceedings are inaugurated. Without it, they could not take place. * * * no one would draw it on the understanding that he was to be paid only a dividend on his fee out of an insolvent estate. Persons in the situation of the grantor in this case are prohibited by the statute from granting a priority to a favored creditor. But *surely this prohibition does not include the case of a debt incurred for the benefit of the creditors, and as a necessary means of dedicating the property to their use.*" Wolsheimer v. Revinus, supra, 1 A. at pages 129–130. (Emphasis supplied.)

Appellee also cites August v. Calloway, C.C.S.D.Ga., 1888, 35 F. 381, 387, decided before Drucker v. Wellhouse, supra, which, in *dictum,* stated that an assignment containing a provision requiring payment of the assignor's attorney was "strongly persuasive" of its invalidity.

We recognize that the decisions favoring validity of a provision similar to that existing here are, in some instances, factually distinguishable; but they do clearly establish the general principle, which we believe to be correct, that state anti-preference statutes do not prohibit the payment in full of expenses incurred in furtherance of the insolvency proceeding and that such expenses may include a fee paid to counsel for the assignor. Whether or not that fee covers only the preparation of the assignment or is for additional services is immaterial so long as the payment is for acts done for the ultimate benefit of the several creditors. Statutes must be construed in a manner consistent with and in support of their objectives. To do so in this instance requires us to hold that the paragraph

in the deed of assignment providing for payment of the assignor's attorney for his services in aid of the assignment is valid.

The judgment appealed from is reversed.