WILLIAM TACKABERRY COMPANY, Appellant, v. GERMAN STATE BANK et al., Respondents.

· (163 N. W. 709.)

(File No. 4160.   Opinion filed July 5, 1917.)

1.  **Constitutional Law—Bulk Sales Law—Fraudulent Conveyances—Police Power—Class Legislation.**

The Bulk Sales Law (Laws 1913, Chap. 116), requiring vendor or exchanger of a stock of merchandise in bulk to furnish vendee list of vendor's creditors, with addresses, and amount due each, prior to receipt by vendor of any part of the consideration for such sale or exchange, etc., and making vendee liable to vendor's creditor's, whether there has or not been compliance with the provisions as to giving notices, and that the consideration for such sale, etc., shall be held in trust to satisfy claims of such creditors, etc., is not unconstitutional as constituting class legislation, but is valid as a proper exercise of the police power.

2.  **Fraudulent Conveyances—Bulk Sales Law, Non-compliance With by Parties—Creditor's Suit Against Vendor—Secured Creditor, Whether a Trustee?—Whether Bona Fide Purchaser.**

In a suit by a creditor against the partnership to recover for goods sold, in which recovery was sought also against aefendant bank on the ground that it was liable to account as trustee for certain lands received by it from the partnership; .it appearing that the debtor's entire stock had been disposed of without compliance with Laws 1913, Chap. 116, known as the "Bulk Sales Law," but that the parties to the transfer wholly failed to comply with said law wherein it provides that vendor shall furnish vendee written list of vendor's creditors, etc., and makes vendee liable to the extent of the consideration paid for the stock, to vendor's creditors, whether compliance with said law has or has not been made, held, that notwithstanding trial court found that defendant bank took the land in good faith, believing that other creditors of the partnership had been protected through assumption of debts by vendee, yet the

bank is liable as such trustee for benefit of plaintiff and other
creditors; nor was the bank an innocent purchaser, in good
faith, for value, since it received the land merely as security
for an existing debt.

3. **Fraudulent Conveyances—Bona Fide Purchaser—Creditor as
Grantee of Land Received on Bulk Sale by Debtor, Construc-
tive Notice to, as Trustee.**

Under said Bulk Sales Law, which provides that any consid-
eration received on sale or exchange of merchandise in bulk
shall be held in trust to satisfy claims of vendor's creditors,
**held,** that a creditor who received land which to said creditor's
knowledge had been given in exchange for a bulk sale stock of
merchandise, as security for a then existing debt, is therefore
and thereby charged with notice that, under said law, the land
was a trust fund in which all creditors of vendor had an in-
terest; and, being so charged with such notice, such creditor
took such trust fund subject to rights of any unpaid cred-
itors, regardless of whether it did or not know of their ex-
istence.

Appeal from Circuit Court, Beadle County. Hon. JOHN F.
HUGHES, Acting Judge.

Action by the William Tackaberry Company, against the
German State Bank, and others, to recover value of merchandise
sold, and to fix liability against defendant German State Bank
as trustee, etc. From a judgment for plaintiff and from an order
denying a new trial plaintiff appeals. Reversed.

*Ernest D. Ede,* and *Sears & Snyder,* for Appellant.

*Gardner & Churchill,* for Respondent.

(1) To point one of the opinion, Appellant cited: Squire v.
Tellier, 185 Mass. 18; McDaniels v. Shoe Co., 30 Wash. 549;
Walp v. Mooar, 76 Conn. 515; Neas v. Borches, 109 Tenn. 398.

Respondent cited: Off v. Moorhead, (Ill.) 85 N. E. 264;
Wright v. Hart, (N. W.) 75 N. E. 404; Block v. Schwartz,
(Utah) 76 Pac. 22; Const. Art. 6, Secs. 2, 18.

(2) To point two of the opinion, Appellant cited: 27 Cyc.,
and cases cited; Martin v. Bowen et al., 26 Atl. 823; Morse v.
Godfrey, 3 Story, 364, 389.

(3) To point three of the opinion, Appellant cited: 52 Am.
Dec. 379; 63 A. S. R. 523; 75 Am. Dec. 233; 89 Am. Dec. 147;
16 Am. Dec. 641.

WHITING, J. Plaintiff, a wholesale company brought this
action against the defendant Kettering, Buell, and Harper, a part-

nership doing business under the name of Kettering & Co., to recover the amount owing from defendant company to plaintiff for goods. Plaintiff joined the German State Bank as a defendant, alleging that said bank was liable to account as trustee for certain trust property which came into its possession. Plaintiff secured judgment by default against the partnership, but findings and conclusions were entered in favor of the defendant bank, upon which findings and conclusions judgment in favor of such bank was rendered. From such judgment and an order denying a new trial, this appeal was taken.

Chapter 116, Laws 1913, known as the "Bulk Sales Law," had just gone into effect at the time of the transaction hereinafter referred to. This law provides, among other things, that prior to the consummation of the sale or exchange of a stock of merchandise in bulk the vendor shall furnish the vendee a written list of the vendor's creditors, containing the post office address of each together with the amount due each; that such list shall be furnished prior to the receipt by the vendor of any part of the consideration for such sale or exchange; that the vendee shall give to each of such creditors a written notice of the contemplated purchase or trade. This law prescribes the liability of the vendee to the creditors, both where there has been a compliance with the provisions as to the giving of notice and where there has not been a compliance therewith. It provides that any consideration received by any person on a sale or exchange of a stock of merchandise in bulk shall be held in trust to satisfy the claims of creditors; in case the claims of creditors shall exceed in amount the said consideration received upon such sale or exchange, the creditors are entitled to share pro rata in such consideration or proceeds thereof.

The trial court found that the defendant partnership was indebted to the plaintiff in the amount claimed by plaintiff at the time of the alleged transfer of the stock of goods; that in the latter part of July, 1913, the partnership traded said stock for a quarter section of land of the reasonable value of $3,200, incumbered by a mortgage and unpaid taxes and interest in the sum of $2,100, and that, as further consideration, the party receiving said stock of goods assumed and agreed to pay indebtedness of said firm in the sum of $1,950; that said partnership was at that time

indebted to defendant bank in the sum of $899.91; that certain members of said firm, as a separate and distinct partnership, were indebted to said bank in the sum of about $5,000; that in making the exchange for said tract of land the vendee of the stock of merchandise, pursuant to the direction of the vendor, executed and delivered a deed which ran direct to the defendant bank; that, by the agreement between the vendor and defendant bank, the vendor was to turn this land over to defendant bank as security for the claims which the bank held against the vendor and against the other partnership composed of certain members of the vendor partnership; that, by the agreement of all defendants, the defendant bank was to dispose of the said land and apply the proceeds over and above the incumbrances upon the debts secured; that thereafter defendant bank, with the knowledge and consent of the defendant partnership, sold said land for the sum of $908.92 above the incumbrances thereon, and applied the same upon their indebtedness against the defendant partnership; that the sale of the stock of merchandise was made in an open, public, and notorious manner, and was generally known for several days prior to the exchange; that the vendee of said stock personally notified the defendant bank, and also personally notified numerous other creditors that he was about to make such exchange, which notice was given more than seven days prior to the date of exchange, but that no notice was given by either the vendee or the vendor to plaintiff; that defendant bank did not know or have any notice of the fact that notice had not been given to plaintiff, and that it in good faith understood and believed that such notice had been given to all the creditors of the defendant partnership; and that the defendant bank had no notice or cause to believe that any indebtedness of the defendant partnership remained unpaid at the time of such exchange, but did in good faith believe that all the debts of said vendor not actually paid at such time were adjusted to the satisfaction of the creditors of vendor through the agreement of the said vendee to assume and pay indebtedness of said firm to the extent of $1,950. It is upon these findings that the trial court entered its conclusions and judgment in favor of the defendant bank, respondent herein.

[1] Respondent contends that the Bulk Sales Law above referred to is unconstitutional. It seems to rely mainly upon the

contention that this act is special or class legislation. While it is true that this law only affects the transfers of stock of merchandise, and was undoubtedly enacted for the protection of and perhaps at the behest of the wholesale houses, yet it seems to us apparent that there exist ample grounds why legislation of this kind applicable to only this particular class of indebtedness may rightfully be enacted. With the wisdom of this law we have nothing to do, but that it is constitutional we think is perfectly clear. Courts are bound to take notice of the fact that the retail mercantile business is conducted largely upon credit, and frequently when the retailer is far distant from the wholesaler. It is impracticable for the retailer to secure the wholesaler by chattel mortgage on the stock of merchandise. The door to fraud through sales by dishonest retailers was thrown wide open until the enactment of "Bulk Sales Laws." They have now been enacted in a majority of the states, and while they vary some in their provisions and a few have been held unconstitutional, the weight of authority as well as of reason is in favor of holding laws such as ours valid as a proper exercise of the police power. Squire v. Tellier, 185 Mass. 18, 69 N. E. 312, 102 Am. St. Rep. 322; McDaniels v. Shoe Co., 30 Wash. 549, 71 Pac. 37, 60 L. R. A. 947, 94 Am. St. Rep. 889; Walp v. Mooar, 76 Conn. 515, 57 Atl. 277; Neas v. Borches, 109 Tenn. 398, 71 S. W. 50, 97 Am. St. Rep. 851; Appel Mercantile Co. v. Barker, 92 Neb. 669, 138 N. W. 1133.

[2] Respondent also contends that, inasmuch as the trial court has found that it took this land in good faith under the belief that the other creditors of such partnership had been protected through the assumption of debts by the vendee, it cannot be held as a trustee of this land for the benefit of plaintiff and the other creditors. In this we think respondent is clearly in error. The findings show that the parties to this transfer of the stock of merchandise wholly failed to comply with the provisions of the Bulk Sales Law. Respondent could not, under the facts found by the trial court, be held to be an innocent purchaser, in good faith, for value, for the simple reason that it received this land merely as security for a then existing debt. 27 Cyc. 1191.

[3] Furthermore, as above noted, this law provides that the consideration passing to the vendor comes into the hands of the

vendor charged with a trust in favor of the creditors of such vendor, and this regardless of whether or not the provisions of the Bulk Sales Law in relation to the giving of notice have been complied with. The evidence in this case shows that the bank knew that this land was received by the partnership in exchange for such stock of goods. Respondent was therefore charged with notice that, under this law, this land was a trust fund in which all of the creditors of the vendor had an interest. Being so charged with notice that it was a trust fund, it took such trust fund subject to the rights of any unpaid creditors, and this wholly regardless of whether it knew of the existence of such creditors or not.

It follows, therefore, that the judgment appealed from was erroneous, but inasmuch as the relief sought is the payment into court of the amount of the trust fund to be held by the court for the benefit of the creditors, we would be inclined to remand this cause, with directions to the trial court to enter judgment based upon the finding that the property was worth $3,200, and that it was incumbered for $2,100 if it were not for what seems to us to be clear errors of the court in its findings as to the value of this land. The very lowest price placed upon this land by any witness was $3,200. Witnesses on behalf of respondent placed the value from $3,200 to $4,000. Witnesses on behalf of appellant placed the value in excess of that. Respondent disposed of this land within some three months, not for $3,008.92, as found by the court, but for some $3,500, as shown by the undisputed evidence in this case. It appears that the purchaser from respondent assumed and paid, as a part of such purchase price, an indebtedness of something over $400 that seems to have been overlooked entirely by the trial court. Moreover, while it appears that at the time the bank disposed of this land there were taxes and interest which made a total incumbrance of some $2,100, yet the undisputed evidence is that, when the bank received the deed for this land, there was neither interest nor taxes due upon the same, the only incumbrance being $2,000. We are therefore of the opinion that there should be a new trial herein.

For the above reasons, the judgment and order appealed from are reversed.